**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND**

---------------------------------------------------------------
:
IN RE: MICROSOFT CORP.          :        **MDL DOCKET NO. 1332**
      **ANTITRUST LITIGATION**       :        Hon. J. Frederick Motz
:
:
:
:
**This Document Relates To:**    :
:
*Kloth v. Microsoft Corp.*, No. JFM-00-2117.    :
:
---------------------------------------------------------------

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION FOR PRELIMINARY APPROVAL
OF PROPOSED SETTLEMENT AND
APPROVAL OF FORM AND MANNER OF NOTICE**

**INTRODUCTION**

The parties have reached a proposed settlement in this action, and the three Class

Representatives, Franklin DeJulius, Paul Dieter, and Gary Leach, through Lead Counsel,

have asked that the Court enter an Order granting preliminary approval and approving the

form and manner of notice.  The proposed settlement is an excellent result for the members

of the Class, and the notice program provided under the settlement is consistent with the

requirements of the Federal Rules of Civil Procedure and due process.  Accordingly, the

motion should be granted.

**FACTUAL BACKGROUND**

This is a class action brought against Microsoft Corporation ("Microsoft") by

licensees of its software.  The Plaintiffs include direct purchasers of Microsoft Operating

System Software Licenses, as well as those whom the Court previously determined were

indirect purchasers.

On May 27, 2003, this Court entered an Order granting in part and denying in part the plaintiffs' motion for class certification. In that Order, the Court certified a class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure solely for the pursuit of monetary damages. (Order of May 27, 2003). The Court defined the certified class as follows:

> All persons and entities in the United States who acquired directly from Microsoft through the shop.microsoft.com Web site (by ordering on line or by calling the toll free number provided there) a license, other than for re-sale or re-licensing, for Microsoft single-user operating system software, including upgrades, compatible with *x*86 computers, but not including Windows 2000 or Windows NT, from February 22, 1999 through April 30, 2003.

(*Id.*) The Court appointed Franklin DeJulius, Paul, Dieter and Gary Leach as the Class Representatives.

Thereafter, plaintiffs moved for partial reconsideration; by Order dated July 28, 2003, the Court granted that motion in part. The Court expanded the class to "include persons who purchased Microsoft Operating Systems Software as 'Full Package Product' in direct marketing campaigns during the class period." (Order of July 28, 2003).

The parties have conferred on an appropriate definition to implement this modification of the certified class, and they have agreed that the following definition is appropriate:

> (1) all persons and entities in the United States who acquired directly from Microsoft through the shop.microsoft.com Web site (by ordering on line or by calling the toll free number provided there by Microsoft) a license, other than for resale or re-licensing, for Microsoft single-user operating system software, including upgrades, compatible with *x*86 computers, but not including Windows 2000 or Windows NT, from February 22, 1999 through April 30, 2003; and (2) all persons and entities in the United States who acquired directly from Microsoft through direct marketing campaigns (by placing an order in response to such a campaign and paying an amount in excess of shipping and handling charges), a license, other than for resale or re-licensing, for Microsoft single-user operating system software in Full Packaged Product form, including upgrades, compatible with *x*86 computers, but not including Windows 2000, Windows NT, or any beta, preview or

other trial version of Microsoft single-user operating system software, from November 10, 1995 through April 30, 2003 (the "Class").

This case was originally listed for trial to commence September 8. Following many months of negotiation, on September 16, 2003, the parties executed a settlement agreement which resolved the claims of the Class. The settlement provides for Microsoft to make a cash payment to each Class member equal to 55.1% of the total purchase price paid for each license (other than for re-sale or re-licensing) of Microsoft single-user operating system software, including upgrades, compatible with *x*86 computers, but not including Windows 2000 or Windows NT, acquired from Microsoft through the shop.microsoft.com Website (by ordering on line or by calling the toll free number provided there), or pursuant to a Microsoft direct marketing campaign from November 10, 1995 through April 30, 2003. (Settlement Agreement at 15).

Based on Microsoft's records, the aggregate amount that would be paid to class members is estimated at $10,500,000, exclusive of the cost of notice, administration, attorneys' fees and expenses. (Settlement Agreement at 15). Class members will be paid automatically based upon Microsoft's records of their purchases, but they will be furnished the opportunity to demonstrate that they are entitled to a greater amount if they have the requisite proof that they acquired additional licenses or paid more for their licenses than Microsoft's records reflect. (Settlement Agreement at 16-17). In return, Microsoft will receive a release of the Class members' claims. The release, by its terms, will not apply to claims related to any conduct of Microsoft after April 30, 2003 or to claims arising from what the Court has previously held to be indirect purchases. (Settlement Agreement at 12-14).

The Class Representatives wish to appeal the Court's refusal to include other groups of licensees in the Class in this action. This added complexity to the settlement agreement,

because measures had to be designed in an effort to preserve that right of appeal notwithstanding the terms of the settlement and the release.  Consequently, the release explicitly indicates that it is "not intended to impair or affect the Class Representatives' interest in shifting the cost of litigation, including attorneys' fees and expenses, to other licensees of Microsoft Operating Systems Software in the event that a broader class of licensees of Microsoft Operating System Software is subsequently certified following an appeal by the Class Representatives and the members of that broader class recover whether by settlement or by judgment." (Settlement Agreement at 14).  Further, the Settlement Agreement includes a provision restricting the scope of what Microsoft may argue on appeal. (Settlement Agreement at 12).

The Settlement Agreement provides for notice in three ways:  first, all class members are to receive notice by mail; in any instance where Microsoft records include an email address but no physical address the notice will be disseminated by email.  (Settlement Agreement at 8).  Second, an internet Website shall be established and a copy of the notice shall be placed there as well.  Third, there will be notice by publication in *USA Today*. (Settlement Agreement at 7).

The parties agree in general over the content of the notice, although there is one issue on the attorneys' fee discussion that the Court will need to resolve.  Plaintiffs' counsel contemplate applying for fees and expenses for their services rendered to the Class in this case, and they recognize that the Class should be notified of that application and be given the opportunity to object.  Plaintiffs' counsel also intend to apply for fees and expenses for the services they have rendered that have benefited other licensees of Microsoft software; that application may be heard in this Court or in other courts or in both.  Plaintiffs' counsel

are of the view that members of the Class do not need to be notified of the amount of these applications.[1]

Defendant is of the view that the Class should be notified of any and all fees and expenses that plaintiffs' counsel will seek for their services. Submitted with this motion are the notice materials in the form that plaintiffs' counsel believe appropriate.

## ARGUMENT

### THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED AND NOTICE SHOULD BE ISSUED TO THE CLASS.

Rule 23(e) of the Federal Rules of Civil Procedure directs that any settlement of a class action be approved by the Court following notice to members of the class. *See* Fed. R. Civ. P. 23(e). The approval of a class action settlement generally follows a two-step process; at the preliminary approval stage, the Court determines whether the settlement "appears to fall within the range of possible approval." *Manual for Complex Litigation (Third),* § 30.41 at 237 (1995). If the Court is satisfied that the settlement proposals meets this standard, then it should schedule a formal fairness hearing and order appropriate notice to class members so that they have an opportunity to object to the settlement if they wish to do so. *Id.*

Since preliminary approvals calls for an assessment of whether the proposed settlement falls within a range of potential approval, consideration of the factors that determine the reasonableness of the settlement is appropriate, recognizing that the analysis is preliminary and that further findings will be made after the fairness hearing. *See Henley v. FMC Corporation,* 207 F.Supp. 2d 489, 492-93 (S.D.W.Va. 2002); *see also In re Microsoft Corp. Antitrust Litigation,* 185 F.Supp. 2d 519, 527 (D.Md. 2002) ("Assessment of the adequacy of a

---

1       Out of an abundance of caution, plaintiffs' counsel have included in the notice a general statement of their intent to make such separate applications.

proposed settlement requires evaluation both of the value of the settlement and the value of the claims being settled").

Courts in this circuit have identified a variety of relevant factors to consider, including whether the settlement was reached through arm's-length bargaining without collusion, as well as "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel …." *See In re Jiffy Lube Sec. Litig.,* 927 F.2d 155, 159 (4th Cir. 1991); *see also Flinn v. FMC Corp.,* 528 F.2d 1169, 1173-74 (4th Cir. 1975); *In re Montgomery County Real Estate Antitrust Litig.,* 83 F.R.D. 305, 315 (D. Md. 1979).

Consideration of the proposed settlement in light of these factors demonstrates that it is well within the range of potential approval. Further, because the proposed notice program is reasonable under the circumstances, this Court should approve the form and manner of notice.

### A.      The Proposed Settlement Plainly Merits Preliminary Approval.

A trial was initially scheduled for September 8 on the Class members' claims against Microsoft. When the case settled, discovery had been concluded, experts had finished their reports and been deposed, motions in limine had been filed, and the parties had exchanged drafts of a pretrial order. Lead counsel for the plaintiffs are seasoned litigators with extensive experience in class actions. They had been working on this case for several years.

The settlement negotiations were lengthy and hard fought. The end result is a settlement in which every class member will receive an amount equal to the overcharge calculated by the plaintiffs' damage expert. In essence, the Class gives up the prospect of treble damages after trial for the certainty of receiving in cash the amount they were overcharged. The wisdom of this compromise should be self-evident. "Antitrust litigation

6

in general, and class action litigation in particular, is unpredictable." *In re Nasdaq Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 476 (S.D.N.Y. 1998). *See, e.g., Berkey Photo, Inc. v. Eastman Kodak Company,* 603 F.2d 263, 268 (2d. Cir. 1979) (vacating $87 million judgment for antitrust plaintiff and remanding for new trial); *United States Football League v. National Football League*, 644 F.Supp. 1040, 1042 (S.D.N.Y. 1986) ("the jury chose to award plaintiffs only nominal damages, concluding that the USFL had suffered only $1.00 in damages"), *aff'd*, 842 F.2d 1335, 1377 (2d Cir. 1988).

The settlement here was plainly the product of good faith bargaining without collusion. This is evidenced by the length of time that the negotiations continued. Discovery had been concluded and the case was ready for trial; this is an important consideration "since it ordinarily assures sufficient development of the facts to permit a reasonable judgment on the possible merits of the case." *Flinn v. FMC Corp.,* 528 F.2d at 1173. The Court was regularly apprised of the parties' progress in the negotiations and there is nothing about that process which would call the fairness of the settlement into doubt. Finally, lead counsel are seasoned antitrust litigators with substantial experience in these matters and had well-developed knowledge of this case.

In light of these factors, it is apparent that the proposed settlement in this action falls well within the scope of possible approval. The settlement is not only fair, reasonable and adequate in its treatment of Class members, it also contains appropriate provisions designed to protect the interests of persons who are not members of the Class. Part of the bargain that the Class Representatives struck were provisions to ensure that claims arising from what the Court had previously determined were indirect purchasers would not be affected by the settlement, and the settlement agreement also has provisions that are intended to protect the Class Representatives' ability to appeal the Court's Order declining to include other

categories of licensees in the Class.  The latter problem, protecting the interests of persons who were direct purchasers but were not included in the Class, posed special problems.

In *Toms v. Allied Bond & Collection Agency, Inc.*, 179 F.3d 103 (4th Cir. 1999), the Court of Appeals specifically addressed the situation where an unsuccessful class litigant had settled and sought to appeal the adverse class ruling.  The Fourth Circuit recognized that a plaintiff in a class action has an interest sufficient to create an actual case or controversy in shifting the cost of litigation to the remainder of the class.  179 F.3d at 105.  On the facts before it, however, the Court in *Toms* held that the plaintiff had released both his individual claim and his interest in shifting the cost of litigation to the remainder of the class.  *Id.* at 105-06. Here, in order to protect the Class Representatives' ability to appeal, the release contained in the settlement agreement expressly provides that it "is not intended to impair or affect the class representatives' interests in shifting the cost of litigation . . . ."  (Settlement Agreement at 14).  These provisions are also reasonable; they do not adversely affect the members of the Class, yet serve to preserve the rights of others.

**B.  The Proposed Notice Program Is Reasonable And Should Be Approved.**

Rule 23(c)(2) requires individualized notice to class members in actions certified under Rule 23(b)(3).  *See* Fed. R. Civ. P. 23(c)(2).  The proposed notice in this case combines the Rule 23(c)(2) certification notice with the settlement notice, a practice which reduces expense and avoids confusion.  *See In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105-06 (5th Cir. 1977); *see also Manual for Complex Litigation (Third),* § 30.121 at 228 (1995).  A copy of the form of notice is appended to the proposed preliminary approval order as Exhibit 1.  This notice, which is modeled on forms recently issued by the Federal Judicial Center, provides Class members with basic information about the case, the certification of the class, the settlement and their rights in connection with this case.  The parties have

endeavored to draft a notice that will be readily comprehensible to members of the public. This will be sent to all members of the Class at the address reflected on Microsoft's records. In an instance where Microsoft's records contains an email address but no physical address, a copy of the notice will be sent by email. In addition, a copy of the notice will be posted on the website to be established by Microsoft.

The Manual for Complex Litigation suggests that in addition to notice by mail, publication may be "advisable as a supplement." *Manual for Complex Litigation (Third),* § 30.211 at 225 (1995). Here, the parties have crafted a somewhat shorter version of the notice for publication which provides basic information to alert potential Class members to the existence of the case and the settlement. A copy of the form of publication notice is appended to the proposed preliminary approval order as Exhibit 2. The published notice directs class members to additional sources of information. The parties propose to publish this notice in *USA Today*, a nationally-circulated newspaper.

The combination of mailed and published notice is common in the context of class action settlements. As one court commented, "[i]t is well settled that in the usual situation first-class mail and publication fully satisfy the requirements of Fed. R. Civ. P. 23 and the due process clause." *Zimmer Paper Products, Inc. v. Berger & Montague, P.C.,* 758 F.2d 86, 90 (3[d] Cir. 1985) (citations omitted).

**C.      Plaintiffs' Proposal on the Description of Potential Attorneys' Fees Is Reasonable and Should be Adopted.**

One issue on Notice divides the parties. The plaintiffs have suggested that the notice provide the following disclosure on the issue of attorneys' fees:

**What are the attorneys going to be paid?**

The Court will decide the amount of the fees to be paid to Class counsel and the extent to which the expenses they incurred in working on this case should be reimbursed. Class counsel intend to seek a maximum of

$ _____ in fees and expenses for the services that they have rendered to the Class, although it is possible they will actually apply for a smaller amount. Under the settlement, Microsoft has agreed to pay reasonable attorneys' fees and expenses to Class counsel in an amount to be determined by the Court. Microsoft has also agreed that it will not oppose an award of up to $10,500,000 in fees and expenses to Class counsel.

Class counsel have indicated that they will also seek to recover attorneys' fees and expenses for services that they performed that conferred benefits on other licensees of Microsoft software. Those fees and expenses may be awarded in this Court or in state court.

(Proposed Preliminary Approval Order, Ex. 1 at 3). Plaintiffs' counsel recognize that the absent members of the Class have an interest in the amount of the attorneys' fees and expenses that will be awarded to counsel for the services rendered to members of the Class in this case, even though the amount of the fees and expenses awarded will be borne by Microsoft. *See In re Cendant Corp. PRIDES Litig.,* 243 F.3d 722, 728-29 (3d Cir. 2001). In *Cendant*, a class member sought review of a fee award, and the attorneys argued that the class member lacked standing since a reduction in the award would not benefit the members of the Class under the settlement. The Court of Appeals noted that a class member has an interest in the amount an attorney will be paid under a settlement even where a reduction in the fee would not enhance the client's recovery, noting that the class members have a legitimate concern that their counsel have agreed to a weak settlement in return for favorable treatment on fees. *Id.* at 729. The Court also noted that the judiciary has an independent duty of supervision over attorneys' fees. *Id.* at 729-30.

Plaintiffs' counsel do not believe that the extent of any fees they may seek based upon benefits other licensees have received from the effort of plaintiffs' counsel need be included in the notice. The rationale for permitting Class members to object to attorneys' fees and expenses set forth in *Cendant Prides* does not, in the view of plaintiffs' counsel, reach this issue. Since Microsoft has not agreed to pay those amounts, there can be no question

of counsel trading off the rights of Class members.  Nor will the Court's independent

oversight function be impaired; Microsoft, as well as the litigants in other cases will likely

object to the application.  The members of the Class will neither suffer an injury if such an

award is granted nor obtain a benefit if it is denied.

**CONCLUSION**

Based upon the arguments and authorities set forth above, the Class Representatives

respectfully submit that the proposed settlement should be preliminarily approved, and the

form and manner of notice should be approved as well.


Dated: September 30, 2003                    Respectfully submitted,


/s/ Stanley M. Chesley                       /s/ Michael D. Hausfeld
Stanley M. Chesley                           Michael D. Hausfeld
Waite, Schneider, Bayless                    Cohen, Milstein, Hausfeld & Toll, PLLC
& Chesley Co., L.P.A                         1100 New York Avenue, NW
1513 Fourth & Vine Tower                     Suite 500 West Tower
One West Fourth Street                       Washington, D.C.  20005
Cincinnati, OH  45202

**PLAINTIFFS' CO-CHAIRS**