UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE MICROSOFT CORP. ANTITRUST LITIGATION | : : : : : : : : : : : |
| This Document Relates To: | MDL DOCKET NO. 1332 |
| ALL CONSUMER CASES | Hon. J. Frederick Motz |

**CERTAIN STATE PLAINTIFFS' COUNSEL'S
SURREPLY IN SUPPORT OF INITIAL OPPOSITION TO
NATIONAL PLAINTIFFS' COUNSEL'S MOTION FOR ATTORNEYS' FEES**

National Plaintiffs' Counsel ("NPC") do not suggest that this dispute over attorneys' fees is within federal question or diversity jurisdiction, but rather argue – without citing a single case addressing a factually analogous situation – that subject matter jurisdiction can be premised on the "inherent power" of the Court to "manage" its caseload and resolve attorneys' fee issues involving work performed for cases pending before the Court – and cases not pending before the Court as well.  Setting aside the numerous red herrings advanced by NPC in support of this argument, the fundamental flaw in its Motion for Attorneys' Fees remains uncorrected – there is no "case or controversy" from which subject matter jurisdiction arises in this Court, because the dispute between NPC and Certain State Plaintiffs' Counsel ("SPC") is not a dispute about attorneys' fees for work performed on behalf of any party in any case presently before this Court, but rather is a dispute about attorneys' fees awarded for work performed by attorneys on behalf

1

Created by Neevia docuPrinter trial version

of parties <u>not</u> before this Court,[1] in cases <u>not</u> before this Court, already addressed by judges in those other courts with clear jurisdiction.[2]

Thus, this Court need look no further than the Fourth Circuit's holdings in *Taylor v. Kelsey,* 666 F.2d 53 (4th Cir. 1981) and *In re Showa Denko*, 953 F.2d 162 (4th Cir. 1992) to confirm that this Court lacks subject matter jurisdiction. In *Taylor*, the Fourth Circuit concluded that trial courts do not have jurisdiction to resolve separate attorneys' fee disputes between counsel for the same party, as contrasted with attorneys' fee disputes between the parties to the underlying case. In *In re Showa Denko*, the Fourth Circuit held that a trial court's inherent power to manage its cases does not extend its jurisdiction beyond the "case and controversy" at issue in the underlying case to allow for collection of settlement monies from state court litigants who had not appeared before that federal court in the case in which the monies sought were earned. Nowhere have NPC found any case law demonstrating that this Court has jurisdiction to resolve attorneys' fee disputes between attorneys, rather than parties, when, as in this case, the fees at issue were awarded to attorneys for work performed in a state court litigation, rather than in a case before this Court.

Moreover, in light of the application of the *Rooker-Feldman* doctrine, and considering the numerous due process violations threatened by NPC's multi-million dollar "motion," this Court has many reasons to deny NPC's Motion for Attorneys' Fees. If NPC truly believe they have

---

[1] Although denial of NPC's Motion for Attorneys' Fees does not depend on it, the Court should be aware that, contrary to NPC's representations, SPC attorneys litigated their state class cases, engaged in the same discovery for which NPC takes sole credit, developed and otherwise obtained from non-NPC sources the discovery and work product necessary to take their cases to trial, and ultimately settled their cases without help from NPC.

[2] This Surreply is directed to certain central issues argued by NPC in their Reply memorandum, and SPC rely upon the arguments set forth in their Opposition Memorandum as to all issues not addressed herein, several of which provide independent and adequate bases for dismissal.

Created by Neevia docuPrinter trial version

valid common law claims, such as quantum meruit or unjust enrichment, against one or more SPC law firms for a portion of the attorneys' fees awarded to SPC by various state courts, NPC must do what any other plaintiff with a dispute must do and bring those claims as new actions in a competent court with subject matter jurisdiction.

### This Court Lacks Subject Matter Jurisdiction

NPC has presented the Court, both in their Motion for Attorneys' Fees and in their Reply, with an inaccurate and misleading view of the facts. Rather than dispute each of those erroneous facts, SPC will set forth the key undisputed facts that demonstrate why NPC cannot recover attorneys' fees in this Court. First, unlike in most of the cases relied upon by NPC, NPC never obtained any attorneys' fee sharing arrangement prior to fees being earned and awarded in other courts, presumably because NPC were controlling an MDL settlement effort which, if it had succeeded, would have placed the NPC leaders in a position to dictate themselves the distribution of attorneys' fees. Second, the attorneys' fees at issue in the pending motion were awarded in various state courts, by state court judges who could have considered (and in some cases did consider) whether NPC was entitled to a portion of the attorneys' fees awarded (or additional fees from Microsoft). Finally, attorneys' fees have already been awarded to NPC for their work in representing their clients in the successful cases filed by NPC. Thus, even if NPC were entitled to share in any attorneys' fees previously awarded by state court judges, they cannot receive those fees from this Court based on any case still pending in this Court.

Taking into account these undisputed jurisdictional facts, this Court can deny NPC's Motion for Attorneys' Fees based solely on the Fourth Circuit's decisions in *Taylor v. Kelsey*, 666 F.2d 53 (4th Cir. 1981) and *In re Showa Denko K.K. L-Tryptophan Prods. Liab. Lit.*, 953

Created by Neevia docuPrinter trial version

F.2d 162 (4th Cir. 1992).  In *Taylor*, the Fourth Circuit, in reviewing an attorneys' fee dispute between plaintiff's counsel and co-counsel, held that trial courts lack subject matter jurisdiction, including specifically ancillary jurisdiction, to resolve attorneys' fee disputes between counsel where such disputes do not arise from the claims resolved in the underlying case or from a dispute between the parties in the underlying case – even where the work performed by the attorney seeking fees was performed in the underlying case.  Specifically, the Fourth Circuit found that "the dispute bore no relationship to the [underlying] litigation and had no effect either upon the litigants or the outcome of the case."  *Id*. at 53.  Such disputes constitute a separate and distinct "case or controversy" from that pending before the Court and must be addressed through separate litigation.  *Id*.

The Fourth Circuit's holding in *Taylor* descends logically from its earlier ruling in *Fairfax County Citizens Ass'n v. County of Fairfax*, 571 F.2d 1299 (4th Cir. 1978), where the Fourth Circuit held that where a dispute over settlement of a lawsuit "had become essentially a contract dispute" between the parties that was "factually and legally distinct" from the underlying litigation (upon which subject matter jurisdiction was proper), the trial court had no subject matter jurisdiction, whether by ancillary jurisdiction, federal question jurisdiction or diversity jurisdiction to address what effectively had become a new case.  *Id*. at 1303-04.  The court initially pointed out that "the fair presumption is . . . that a cause is without its jurisdiction until the contrary appears. . . . The burden of establishing jurisdiction is on the party claiming it." *Id*. at 1303 (citations omitted).

The *Fairfax County Citizens Ass'n* court then suggested that the only option for the parties was to file a new lawsuit to address the new "case or controversy" if the parties could

Created by Neevia docuPrinter trial version

demonstrate a basis for subject matter jurisdiction.  *Id*.  In the end, the mere fact that the settlement agreement arose from the underlying case and resolved the underlying case did not mean that subject matter jurisdiction over the underlying case would somehow transfer to the new dispute over the settlement agreement.  *Id*. at 1305-06.  The instant case is even weaker factually than *Fairfax County Citizens Ass'n*, as NPC's claims do not arise from any settlement agreement in this Court.

Similarly, in *In re Showa Denko*, the Fourth Circuit expressly rejected arguments similar to those made by NPC, holding that a trial court's authority to consolidate MDL cases does <u>not</u> expand its jurisdiction and allow it to reach cases that have not been transferred to that particular court.  *In re Showa Denko*, 953 F.2d at 165-66.  While NPC argue that the Fourth Circuit's holding was merely that personal jurisdiction is required for a trial court to manage attorneys' fee disputes involving counsel representing parties in state court actions, the holding in *In re Showa Denko* is much broader and reinforces SPC's argument that unless SPC law firms are parties to a lawsuit before this Court, there is no subject matter jurisdiction for this Court to resolve disputes between SPC law firms and NPC.  *Id*. at 165-66.

In fact, the Fourth Circuit expressly criticized the trial court's attempts to order attorneys' fee contributions from parties in state court cases not pending before the federal court, noting the "impermissible reach" of such an order and finding that "the district court simply has no power to extend the obligations of its order to them."  *Id*. at 166.  *See also Hartland v. Alaska Airlines*, 544 F.2d 992, 1002 (9th Cir. 1976) (Ninth Circuit ordered return of funds earmarked for counsel that had been deposited by appellants in state court lawsuits where court lacked jurisdiction to compel such contribution even though trial court engaged in extensive activities to coordinate all

5

Created by Neevia docuPrinter trial version

claims and future cases).  While NPC argues that the Court has subject matter jurisdiction to resolve their Motion for Attorneys' Fees through exercise of its powers of ancillary jurisdiction, NPC, by relying upon *In re Showa Denko* and *In re Air Crash Disaster at Florida Everglades*, unwittingly acknowledge that such jurisdiction, as it relates to attorneys' fees, arises from the Court's ability to manage *its* cases – not cases pending in front of or resolved by different courts.

Moreover, the case law relied upon by NPC does not support their claims and, in fact, fully supports SPC's argument that this Court lacks subject matter jurisdiction.  This point becomes self-evident upon examination of *In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006, 1016 (5th Cir. 1977), the primary case relied upon by NPC.  NPC suggest that *In re Air Crash Disaster* stands for the proposition that the Court has the power to award compensation to NPC "to be paid by other plaintiffs' counsel out of the fees they were entitled to receive."  NPC Reply at 4.  However, NPC deliberately ignore the fact that the Fifth Circuit specifically noted that this "managerial power" arises from the court's power to control the "disposition of the causes on <u>its</u> docket," not on a different court's docket.  *In re Air Crash Disaster*, 549 F.2d at 1012.  In fact, *In re Air Crash Disaster* involved a dispute between counsel representing various plaintiffs in various federal courts in cases that had been consolidated in a single court in the Southern District of Florida.  Moreover, the trial court in *In re Air Crash Disaster* had – unlike in the present case – issued an order requiring all parties in the cases heard by the trial court to make payments to lead counsel in advance of the settlements at issue.  *Id*. at 1016.

Nowhere did the Fifth Circuit suggest that trial courts have the "managerial power" to control attorneys' fee disputes arising from fees awarded in state court cases that were not

6

Created by Neevia docuPrinter trial version

pending before the federal court or to do so retroactively.  In fact, NPC inexplicably fail to point out that the Fifth Circuit, in addressing this issue and noting that several cases were not before the court, expressly restricted its holding to recoveries in cases actually before the court, pointing out: "We accordingly do not specifically consider the authority of the district court to assess a fee in cases not formally before it."  *In re Air Crash Disaster*, 549 F.2d at 1010.  The Fifth Circuit specifically noted that "the district court in this case exercised control of the monies involved in all suits <u>pending before the court</u>."  *Id*. at 1018 (emphasis added).  Thus, *In re Air Crash Disaster* stands for the proposition that a trial court has authority to order the division of attorneys' fees between counsel where all those fees were awarded in underlying cases within the court's jurisdiction – a wholly different factual scenario than is presented by the present dispute.

NPC's representation that the Fourth Circuit has "accepted the key points of law" set forth in *In re Air Crash Disaster* is misleading because NPC's representation of the holding of *In re Air Crash Disaster* is, as set forth above, incorrect.  In fact, in *In re Showa Denko K.K. L-Tryptophan  Prods. Liab. Lit.*, 953 F.2d 162 (4th Cir. 1992), the Fourth Circuit confirmed SPC's understanding of *In re Air Crash Disaster* by expressly stating that the court's authority for consolidating cases in multi-district litigation "is merely procedural and does not expand the jurisdiction of the district court to which the cases are transferred. . . . As in any other case, a transferee court's jurisdiction in a multi-district litigation is limited to cases and controversies between persons who are properly parties to the cases transferred."  *In re Showa Denko*, 953 F.2d at 165-66.  Nowhere did the Fourth Circuit suggest that the transferee court's jurisdiction could be expanded over attorneys' fee disputes arising in lawsuits in state courts, when those

Created by Neevia docuPrinter trial version

lawsuits were either never in front of the transferee court or were remanded by the transferee court.

In addition, NPC repeatedly relies on *Marino v. Pioneer Edsel Sales, Inc.*, 349 F.3d 746, 752-53 (4th Cir. 2003), for the proposition that the Court has authority to address the Motion for Attorneys' Fees because it has inherent authority to "preserve its ability to manage class action" cases, even after the conclusion of the underlying case. NPC fail to mention, however, that the basis for subject matter jurisdiction over the attorneys' fee dispute in *Marino* was a written settlement agreement by the parties to the underlying litigation in the federal court specifically reserving jurisdiction over such attorneys' fee disputes to the court. *Id*. at 753. Of course, there is no such agreement or order in this case. NPC's theory is simply overbroad, because federal courts are not authorized to control and decide attorneys' fee awards in related cases in state courts on the purported rationale of "case management" when such cases are not in front of the federal court.

This is also not a case like *In re: Rezulin Products Liability Litigation*, 2002 WL 441342 (S.D.N.Y. March 20, 2002), where counsel explicitly agreed to a court's jurisdiction. In *Rezulin*, the only state cases to which a "hold back" order applied were those where there was an appropriate document, called a "Submission," in which plaintiffs and counsel in state Rezulin cases agreed in advance to be bound by, and submitted to the jurisdiction of the federal district court for purposes of enforcement of the allocation of fees pursuant to any Order, and to the entry and enforcement of any subsequent order relating to attorneys' fees and costs. In *Rezulin*, the Plaintiff's Executive Committee applied for an Order Securing an Equitable Allocation of Counsel Fees and Costs for Common Benefit Work, but the deduction of four percent of the

Created by Neevia docuPrinter trial version

recovery in an electing state Rezulin case applied only to those state cases in which plaintiff and plaintiff's counsel filed a Submission agreeing to be bound by and submitting to the federal court's jurisdiction with respect to common benefit fees.  *Id*. at *1-2.

Finally, in *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 380-81 (1994), the Supreme Court held that trial courts do not have "inherent authority" to resolve disputes over settlement agreements because, absent a written order incorporating the settlement agreement, there is no independent basis for the court to exercise jurisdiction.  While NPC cavalierly suggest that the Supreme Court's holding in *Kokkonen* is not relevant here, NPC can point to no written agreement or order from the Court encompassing the payment of attorneys' fees by SPC to NPC, nor does the Court's Pretrial Order provide any such basis for jurisdiction over attorneys' fee disputes between NPC and SPC.  There was certainly nothing preventing NPC from seeking a written fee agreement with SPC, but NPC chose not to do so, and it is too late to do so now.

Ultimately, NPC cannot point to a single case holding that a federal district court can exercise subject matter jurisdiction through ancillary jurisdiction or "independent authority" over attorneys' fees disputes between counsel representing a party in a case before the court and counsel representing parties in a different case before a different court.  The fact that every case relied upon by NPC can be easily distinguished by either the presence of an express stipulation of authority over attorneys' fees issues or by the fact that all the attorneys involved in the dispute were arguing over the attorneys' fees to be awarded in that same case before the same court simply demonstrates the futile nature of NPC's attempts to create subject matter jurisdiction when it does not exist.

Created by Neevia docuPrinter trial version

## NPC's Claims Are Barred By The *Rooker-Feldman* Doctrine

NPC's argument against application of the *Rooker-Feldman* doctrine is premised on their nonsensical claim that they do "not seek to disturb any state court fee awards" – a claim that belies reality.  The undisputed facts demonstrate that various members of SPC were awarded attorneys' fees in various states based on their work, on behalf of their clients, in their individual state court cases.  While SPC were pursuing these state law cases, NPC chose to focus the MDL effort on the federal claims that this Court ultimately dismissed under *Illinois Brick*. Consequently, not only would it be fundamentally unfair for the Court to award any monies to NPC from SPC's awards in the state courts, but any monies obtained by NPC from SPC pursuant to the Motion for Attorneys' Fees would also result in a de facto reduction, and thus an effective modification, of the state court fee awards to SPC.  This Court cannot ignore the various state court rulings relating to attorneys' fees awards to SPC, which is precisely what NPC are requesting of this Court.

Of course, NPC does not seek to increase the size of the pie available from Microsoft, as they could have done if they had timely participated in the state court actions, but rather seeks a portion of SPC's pie.  Such action would render the state court fee awards ineffectual, thereby demonstrating that the relief sought by NPC is inextricably intertwined with the state court fee awards – and thus barred under the *Rooker-Feldman* doctrine.  *See Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 202 (4th Cir. 1997) (holding that *Rooker-Feldman* doctrine applies not only where litigant asks the federal court to determine that the state court judgment was erroneous, but also where the litigant asks the federal court to "take action that would render the [state court] judgment ineffectual.").

Created by Neevia docuPrinter trial version

In arguing that their claims are not barred by the *Rooker-Feldman* doctrine, NPC rely on the Supreme Court's recent decision in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 125 S. Ct. 1517 (2005). In that case, the Supreme Court clarified the parameters of the *Rooker-Feldman* doctrine and reinforced its applicability in the present situation, noting that the doctrine applies to cases where "state-court losers complain of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id*. at 1521. That is precisely the situation here – NPC lost their motions to intervene in various state courts and commenced a "new" action here without filing a complaint by way of their Motion for Attorneys' Fees, complaining that the state court judgments allocating attorneys' fees to SPC should be effectively modified by reallocating a portion of those attorneys' fees to NPC. As the *Saudi Basic* court pointed out, however, the *Rooker-Feldman* doctrine would still apply where, instead of seeking appellate review of a state court decision, a party filed a federal action to obtain review of that state court decision. *Saudi Basic*, 125 S. Ct. at 1524 (citing *ASARCO, Inc. v. Kadish*, 490 U.S. 605, 622-23 (1989).

Finally, while NPC suggests that it was not a formal "party" to the underlying state cases, NPC filed motions to intervene in various state courts which, although denied, could have been appealed to state appellate courts (indeed, some were appealed), and thus NPC were directly subject to a state court order which they now seek to flout. This issue was directly addressed by the Seventh Circuit in *Wright v. Tackett*, 39 F.3d 155, 158-59 (7th Cir. 1994), cert. denied, 513 U.S. 1150 (1995), which held that where a party's motion to intervene is denied by a state trial court, the party cannot recast its claims under federal law in an attempt to convince a federal district court to reverse the state court's decision denying the party's motion to intervene. As the

Created by Neevia docuPrinter trial version

Seventh Circuit explained, the federal courts have no subject matter jurisdiction pursuant to the

*Rooker-Feldman* doctrine:

> Here, application of the *Rooker-Feldman* doctrine requires
> dismissal of this action for lack of subject matter jurisdiction.
> Although Wright's complaint presented several constitutional –
> albeit conclusory – claims, those claims are inextricably
> intertwined with the various state court determinations handed
> down previously. In essence, Wright asked the federal district
> court to review the state court's denial of his requests to intervene
> in the foreclosure actions. Because the district court does not have
> authority to exercise such review, the complaint should have been
> dismissed for lack of subject matter jurisdiction. Wright may not
> seek a reversal of a state court judgment simply by casting his
> complaint in the form of a civil rights action. The merits of the
> state court's rulings are beyond the jurisdiction of the district court
> and this court. Any relief for Wright must come from the Indiana
> judicial system and not from us.

*Wrigh*t, 39 F.3d at 158-59 (citations omitted). In such situations, like here, the merits of the state

court's rulings are beyond the jurisdiction of the federal district court, but rather must be

resolved within the state court system. *Id*. at 158.

<u>**NPC'S Claims Are Barred By Due Process Concerns**</u>

NPC have made no attempt to explain why the federal due process concerns raised by

SPC would not bar NPC's Motion for Attorneys' Fees except to argue that due process is flexible

and that in *Marino* and *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990), the courts held

that trial courts have authority to handle collateral issues even after the underlying action has

been resolved. In those two cases, however, the collateral issues that the trial courts resolved

were either expressly reserved by the trial court (*Marino*) or involved the imposition of Rule 11

sanctions after dismissal of a case (*Cooter & Gell*).

In no case relied upon by NPC did a court hold that a dispute regarding sharing of attorneys' fees amongst counsel in multiple cases in multiple courts arising after resolution of the underlying cases need not be brought forth in a separate complaint.  In fact, NPC cite *Hensley v. Eckhart* for the proposition that a request for attorneys' fees should not generate a new lawsuit, but that case dealt with the prototypical situation where a court was asked to resolve an attorneys' fee dispute pitting the winning party in the lawsuit against the losing party in the same lawsuit.  Obviously, if NPC have a dispute with Microsoft concerning attorneys' fees, such a dispute should not generate a new lawsuit, but that is hardly the situation facing this Court.

Thus, NPC ignore the due process problems raised by their Motion for Attorneys' Fees, including their failure to put the undersigned, their co-counsel or defendant on notice as to the identity of the entities and individuals from whom monies are sought by NPC, or who specifically is seeking which monies, their failure to provide an opportunity for SPC to present counterclaims or cross-claims, their failure to provide SPC with the opportunity to conduct discovery or to join necessary parties and their failure to provide for the issues to be decided by a jury trial, and NPC do not even respond in any substance to SPC's due process arguments concerning the timing of NPC's Motion for Attorneys' Fees – long after such a motion was required to be filed.

Finally, NPC attempt to dispute SPC's reliance on the Manual on Complex Litigation by focusing on a meaningless distinction between the words "should" and "shall," ignoring the underlying fact – that if NPC wanted the type of fee-sharing arrangement that they seek through their Motion for Attorneys' Fees under the Court's MDL coordination authority, NPC should have sought such an agreement in the beginning of the litigation.  To let the matter "slide" for

Created by Neevia docuPrinter trial version

years, to have cases settle, fees awarded against Microsoft without any understanding that NPC was somehow entitled to those fees, and then to seek an after-the-fact redistribution of those attorneys' fees from this Court – after NPC have lost similar arguments before the various state courts – is fundamentally at odds with the Manual on Complex Litigation, contradicts the limited jurisdiction of this Court over the coordinated proceedings and makes a complete mockery of basic due process.

## CONCLUSION

Ultimately, NPC seeks to have this federal district court handle several quasi-contractual actions among many law firms which will generate substantial discovery, and then conduct at least one, and potentially several separate trials to resolve the numerous state law issues concerning NPC's Motion for Attorneys' Fees – all arising from what is, in reality, NPC's "sour grapes" concerning their failure to either succeed more substantially in the federal cases, where they chose to pursue the "OEM" case and an "end user" case with "direct purchaser" theories,[3] or obtain an agreement concerning attorneys' fees prior to the fees being awarded.  In view of the undisputed jurisdictional facts set forth herein, and considering the complete lack of subject matter jurisdiction over NPC's Motion for Attorneys' Fees, the fact that NPC's Motion is barred by the *Rooker-Feldman* doctrine and the numerous procedural due process issues that would be raised by hearing such a "motion" in this case, and for the other reasons set forth in SPC's initial

---

[3] These cases had great potential for NPC to earn fees, if the Court had allowed them to proceed.  Of course, the Court did not, for the most part, but the Court did approve a settlement to NPC of approximately $10.5 million in attorneys' fees and costs.  Having placed their eggs in those baskets, NPC cannot now seek to recover for those failed efforts by seeking payment in cases where they were so absent that the trial courts would not award them fees and, in some cases, would not even allow them to intervene.

14

motion papers (such as NPC's failure to state a substantive claim upon which relief can be granted), SPC respectfully request that this Court deny NPC's Motion for Attorneys' Fees.

DATED: Baltimore, Maryland   Respectfully submitted,
     June 2, 2005

           By: _____/s/_____
            Joshua R. Treem (Fed. Bar No. 00037)
            Andrew M. Dansicker (Fed. Bar No. 11765)
           SCHULMAN, TREEM, KAMINKOW, GILDEN
            & RAVENELL, P.A.
           The World Trade Center
           410 East Pratt Street, Suite 1800
           Baltimore, MD  21202-3004
           Telephone: 410/332-0850
           410/332-0866 (fax)

           *Counsel for Lerach Coughlin Stoia Geller Rudman & Robbins LLP, Kirby McInerney & Squire LLP, Lieff Cabraser Heimann & Bernstein, LLP, Heideman Lezell Nudelman & Kalik, P.C. and Kaufman Dickstein & Grunspan P.A.*

           Leonard B. Simon
           Susan G. Taylor
           LERACH COUGHLIN STOIA GELLER
            RUDMAN & ROBBINS LLP
           401 B Street, Suite 1700
           San Diego, CA  92101
           Telephone:  619/231-1058

15

Created by Neevia docuPrinter trial version

Daniel Hume
KIRBY, McINERNEY & SQUIRE, LLP
830 Third Avenue, 10th Floor
New York, NY  10022
Telephone:  212/317-2300

Robert L. Lieff
Michele C. Jackson
David S. Stellings
LIEFF, CABRASER, HEIMANN
 & BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339
Telephone:  415/956-1000

Robert D. Heideman
Noel J. Nudelman
Tracy Reichman Kalik
HEIDEMAN LEZELL NUDELMAN &
        KALIK, P.C.
1146 19th Street, Fifth Floor
Washington, D.C.  20036
Telephone:  202-463-1818

Edward A. Kaufman
KAUFMAN  DICKSTEIN  &  GRUNSPAN
P.A.
200 S. Biscayne Blvd. Suite 4650
Miami, FL 33131
Telephone:  305-372-5200

Created by Neevia docuPrinter trial version

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Certain State Plaintiffs' Counsel's Surreply In Support of Initial Opposition to National Plaintiffs' Counsel's Motion for Attorneys' Fees was served this 2nd day of June, 2005, via the Court's electronic filing system and by first-class mail, postage prepaid upon the following counsel:

Stanley M. Chesley
Robert Heuck II
Waite, Schneider, Bayless & Chesley, P.A.
1513 Fourth & Vine Tower
One West Fourth Street
Cincinnati, Ohio 45202

Richard M. Hastrom
Zelle, Hoffman, Voelbel, Mason &
 Gette, LLP
500 Washington Avenue South,
Suite 4000
Minneapolis, MN 55415

Michael D. Hausfeld
Daniel A. Small
Cohen, Milstein, Hausfeld & Toll, P.C.
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C. 20005

Steven F. Benz
Kellogg, Huber, Hanson, Todd &
 Evans, PLC
1615 M. Street, NW, Suite 400
Washington, D.C. 20036

Edmund L. Carey, Jr.
Barrett, Johnston & Parsley
217 Second Avenue, North
Nashville, TN 37201

Thomas C. Wilcox
Offices of Thomas C. Wilcox
601 Indiana Avenue, N.W. Suite 500
Washington, D.C. 20004

R. Stephen Berry
2000 K Street, N.W.
Washington, D.C. 20001

Joshua I. Barrett
DiTrapano Barrett & DiPiero, PLLC
604 Virginia Avenue, East
Charleston, West Virginia 25301

Charles B. Casper
Montgomery, McCracken, Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA 19109

G. Stewart Webb, Jr.
Venable, LLP
1800 Mercantile Bank & Trust Bldg.
2 Hopkins Plaza
Baltimore, Maryland 21201

Created by Neevia docuPrinter trial version

Richard J. Wallis
Steve J. Aeschbacher
Microsoft Corp.
One Microsoft Way
Redmond, Washington 98052

David B. Tulchin
Richard C. Pepperman, II
Sharon L. Nelles
Sullivan & Cromwell LLP
125 Broad Street
New York, New York 10004

_____/s/_____
Andrew M. Dansicker

Created by Neevia docuPrinter trial version