UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

IN RE MICROSOFT CORP.
ANTITRUST LITIGATION

This Document Relates To:

ALL CONSUMER CASES

:
:
:
:
:
:
:
:
:
:
:
:

MDL DOCKET NO.  1332
Hon. J. Frederick Motz

**SURREPLY MEMORANDUM OF ZELLE, HOFMANN, VOELBEL, MASON & GETTE LLP SPECIALLY APPPEARING IN OPPOSITION TO NATIONAL PLAINTIFFS' COUNSEL'S MOTION FOR ATTORNEY FEES**

William P. McGrath, Jr.
Donald M. Barnes
Porter, Wright, Morris & Arthur
1919 Pennsylvania Avenue NW
Suite 500
Washington, DC  20006-3434
202 778-3000 Telephone
202 778-3063 Fax

ATTORNEYS FOR ZELLE, HOFMANN,
VOELBEL, MASON & GETTE LLP

> [P]laintiffs in state and untransferred federal cases have not voluntarily entered the litigation before the district court nor have they been brought in by process. The district court simply has no power to extend the obligations of its order [concerning attorney's fees] to them.

*In re Showa Denko K.K. L-Tryptophan Products Liab. Litig.*, 953 F.3d 162, 166 (4th Cir. 1992).

* * * * *

The plaintiffs' lawyers in the *Gordon*[1] case were willing and able to take Microsoft to trial in Spring 2004, and consequently they obtained a sizable settlement on behalf of Minnesota consumers. The Minnesota lawyers were compensated for *their* extraordinary efforts – not for any alleged efforts by the National Plaintiffs' Counsel ("NPC"). Nevertheless, despite adverse controlling Fourth Circuit precedent, NPC seeks an order requiring counsel for plaintiffs in *Gordon* and other state court lawsuits against Microsoft ("SPC") to pay NPC $24 million of the attorneys fees awarded in those cases.[2] The *Showa Denko* decision precludes such an order, and NPC has argued for no good faith extension of the law to avoid that holding. Instead, NPC makes misleading and false statements, and cites irrelevant case law, in its attempt to require non-parties, namely SPC, to pay NPC.

Just as the Court has no jurisdiction over the Minnesota plaintiffs, it has no personal jurisdiction over the Minnesota lawyers who took the *Gordon* case to trial. NPC fails to address, or even mention, the basic requirements for the exercise of personal jurisdiction. NPC likewise makes no attempt to distinguish the cases cited by Zelle Hofmann demonstrating that the

---

[1] *Gordon v. Microsoft Corp.*, Civil No. 00-5994, in the district court of Hennepin County, Minnesota.

[2] To the extent it may do so without waiving its jurisdictional defenses, Zelle Hofmann also joins in the Surreply of Certain State Plaintiffs' Counsel.

exercise of personal jurisdiction in this dispute is improper.  In short, NPC has failed to meet *its burden* of proving that jurisdiction is proper.  *See Choice Hotels Int'l, Inc. v. Madison Three, Inc.*, 23 F. Supp. 2d 617, 619 (D. Md. 1998) (party asserting existence of personal jurisdiction has burden of proof on jurisdictional question).  For that reason alone, NPC's motion must be denied.

NPC has no business bringing the present "dispute" before this Court, particularly as to Zelle Hofmann.  While claiming to have undertaken "Herculean efforts" for the benefit of the independent state cases, NPC acknowledges that only a "small amount of [its] work [was] done specifically for certain state cases."  NPC Reply at 2 n.2.  Indeed, NPC has not identified *any* work allegedly done on the *Gordon* case, either in its briefing before this Court or during the final approval process before the trial court in Minnesota.  That, of course, is why NPC made the "strategic decision," NPC Reply at 40, not to submit a fee petition to the trial court in Minnesota. Additionally,

- NPC *admits* that "no enforceable fee agreement exists" between it and Zelle Hofmann.  NPC Reply at 43.

- There was no "joint venture" between NPC and Zelle Hofmann.  NPC Reply at 25.  While lead counsel for NPC and Minnesota Co-Lead Counsel explored the possibility of working together on the *Gordon* case, no such arrangement was entered because NPC wanted too much compensation.  (Affidavit of Richard M. Hagstrom in Support of Memorandum in Opposition ("Hagstrom Opp. Aff.") ¶ 11.)

- NPC was paid for its time in the federal cases.

- NPC never appeared as counsel in *Gordon*.  (Surreply Affidavit of Richard M. Hagstrom ("Hagstrom Surreply Aff.") ¶ 10; Hagstrom Opp. Aff. ¶ 20.)

- NPC represented no client in *Gordon*.  (Hagstrom Surreply Aff. ¶ 10.)

- Zelle Hofmann, co-lead counsel in *Gordon*, spent over 31,241 hours representing the named class representatives and class members. (Hagstrom Surreply Aff. ¶ 2.) Along with other Minnesota counsel, Zelle Hofmann obtained a $182 million settlement on behalf of the Minnesota class. (*See* Hagstrom Opp. Aff. ¶ 15.)

- Zelle Hofmann was awarded fees in *Gordon* solely for the time spent by attorneys and staff at Zelle Hofmann and was not awarded any fees for any time expended by NPC. (Hagstrom Surreply Aff. ¶ 3.)

- NPC has not identified a single hour of time it expended for the benefit of Minnesota class members for which it would be entitled to payment by Microsoft under Minnesota's fee shifting statute, Minn. Stat. § 325D.57.

- NPC did not create a "fund" for the Minnesota plaintiffs. In fact, had NPC been successful with its proposed national settlement—negotiated in direct violation of *Gordon* Pretrial Procedures Order No. 1—Minnesota class members would have received *nothing*. Instead, through the efforts of Zelle Hofmann and co-counsel, class members received a settlement valued up to $182 million. (*See* Hagstrom Opp. Aff. ¶ 15.)

- Not only did NPC provide no "benefit" to Minnesota class members, NPC has not provided evidence of any alleged benefit to Zelle Hofmann.

Simply put, NPC should not be permitted to make an end run around the Minnesota trial court's final fee award. This conclusion is especially compelling here, where personal jurisdiction is absent and the relief NPC seeks would violate due process.

## ARGUMENT

### A. NPC HAS FAILED TO SHOW THAT ZELLE HOFMANN IS SUBJECT TO PERSONAL JURISDICTION IN THIS DISPUTE.

NPC's Reply Memorandum does not include any mention—let alone discussion or analysis—of the factors a court must examine to determine whether the exercise of personal jurisdiction over Zelle Hofmann is proper. *See generally Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). Nowhere does NPC

use the terms "specific jurisdiction" or "general jurisdiction." Moreover, NPC does not discuss, much less distinguish, any of the cases Zelle Hofmann cited in its Opposition Memorandum[3] that establish that the exercise of jurisdiction by the Court over Zelle Hofmann is improper. Instead, ignoring abundant case law to the contrary, NPC simply describes the presence of jurisdiction as "self-evident."

The only "authority" NPC cites in support of its position is an unreported decision, *Bentz v. Reed Elsevier, Inc.*, 2000 WL 33244507 (S.D. Ohio Dec. 5, 2000). That case, however, is not on point. In *Bentz*, a lawsuit was transferred to a different district, and plaintiffs' counsel did not oppose the transfer. Following the transfer, the court held a preliminary pretrial conference via telephone with counsel for both parties, and ordered plaintiffs' counsel to enter an appearance and to file a motion requesting dismissal with prejudice. "[T]he Court made certain that [plaintiffs' counsel] understood what it expected him to do." *Id.* at *1. When plaintiffs' counsel did not obey the order and defendants moved for sanctions, plaintiffs' counsel argued the court lacked personal jurisdiction. The court disagreed, holding that it had power to enforce its orders against counsel who knowingly defied them. To the extent *Bentz* has any precedential value, it simply stands for the unexceptionable proposition that a court has the power to enforce its orders in a case *before it* for misconduct of counsel *in that case.* No such circumstance exists here.

Ultimately, NPC cannot establish that this Court can exercise either specific or general jurisdiction over Zelle Hofmann. NPC surely has not established that Zelle Hofmann has such "continuous and systematic contacts" with Maryland that it can be subject to general jurisdiction here. *See Helicopteros Nacionales*, 466 U.S. at 415-16 (requiring "continuous and systematic

---

[3] At pages 12 to 15.

4

contacts" with a forum to support general jurisdiction over a nonresident). The alleged Zelle Hofmann "contacts" that NPC cites do not create general jurisdiction. Likewise, there is no basis for the exercise of specific jurisdiction, because the fee award in the *Gordon* case does not "arise out of or relate to" these "contacts" with Maryland. *See Burger King Corp.*, 471 U.S. at 472 (specific jurisdiction exists where nonresident "purposefully direct[s]" its activities at the forum and the litigation "arise[s] out of or relate[s] to" those activities). Even if the allegations were accurate—which they are not—these "contacts" would not provide a basis to exercise personal jurisdiction over Zelle Hofmann to convert a *res* earned in another case in another jurisdiction. The result sought by NPC would be a clear denial of due process.

1.   **NPC's "Counsel of Record" Argument Does Not Establish that the Court Has Jurisdiction Over Zelle Hofmann for Purposes of *this Dispute*.**

NPC argues that Zelle Hofmann is subject to personal jurisdiction because it was "counsel of record" in *Rubbright Group v. Microsoft Corp.*, a case filed in Minnesota state court that was removed and then transferred to the MDL. NPC asserts that "Zelle Hofmann filed a formal notice of appearance in MDL 1332." NPC Reply at 34. This notice of appearance, though, was limited to representation of the plaintiffs in the *Rubbright* case. *See* Heuck Aff. Ex. J at 1, 2. Moreover; it was filed with the Judicial Panel on Multidistrict Litigation on December 31, 1999, see *id.*, while *Rubbright* was venued in the District of Minnesota and nearly five months *before* the case was transferred to this Court.[4]

Even if Zelle Hofmann was "counsel of record" in *Rubbright* after the case was transferred, it nevertheless does not follow that this Court now has jurisdiction over Zelle

---

[4] *Rubbright* was transferred on April 25, 2000. (Hagstrom Surreply Aff. Ex. 1.)

Hofmann for all purposes.[5]   In *Rubbright*, as NPC readily acknowledges, NPC Reply at 32, the only act that Zelle Hofmann performed during the time the case was pending in this Court was to join in an unsuccessful mass motion to remand a slew of cases, including *Rubbright*.   NPC also states, incorrectly, that attorney Hagstrom "appeared" during the 2001 preliminary hearings. NPC Reply at 34.   In fact, Hagstrom attended one day of the preliminary hearings but never entered a formal appearance.   (*See* Hagstrom Opp. Aff. ¶ 26.)   Such acts do not constitute the purposeful availment of a Maryland forum.   *See Burger King Corp.*, 471 U.S. at 472 (requiring activities "purposefully directed" at forum to support jurisdiction).

## 2. Zelle Hofmann's Alleged Involvement in "Coordinated Discovery" Does Not Give Rise to Personal Jurisdiction.

NPC notes that Hagstrom requested positions on two committees and was appointed a member of the expert committee.   NPC Reply at 34.   However, NPC excluded Hagstrom from expert committee activities.   (Hagstrom Surreply Aff. ¶ 5.)   NPC also incorrectly states that Zelle Hofmann was given "full access to the Internet document database created and paid for primarily

---

[5] A brief response is required to NPC's bizarre assertion that the four-year pendency of an inactive case that was transferred to this Court "is further evidence that [Zelle Hofmann was] indebted to NPC for doing most of the work for [the Minnesota] cases."   NPC Reply at 31.   The length of time that a case is pending is not relevant to the question of personal jurisdiction over the lawyers representing the parties.   The *Rubbright* case to which NPC is referring was originally filed in Minnesota state court, was removed to federal court, and was transferred to this Court in 2000.   This Court denied a mass motion to remand—a motion which included *Rubbright*.   As a result, that case languished, as merely one of many individual cases consolidated in this Court, and was ultimately dismissed. No "fund" was generated by *Rubbright*.

Meanwhile, Zelle Hofmann vigorously prosecuted the *Gordon* action in Minnesota state court.   Ultimately, *Gordon*—not *Rubbright*—went to trial and was successfully settled.   It was for *their work* on the *Gordon* case, not on the *Rubbright* case, that Zelle Hofmann and the other Minnesota plaintiffs' counsel were compensated.   Zelle Hofmann was *not* paid for any alleged work by NPC.   It is the *Gordon* case from which NPC is now seeking to convert these fees.   Minnesota Plaintiffs' counsel expended almost 60,000 hours on the *Gordon* case over the course of almost 5 years.   (Hagstrom Sur-reply Aff. ¶ 2.)   NPC's suggestion that its member firms did "most of the work," NPC Reply at 31, is insulting, utterly false, and deserving of sanctions.

by MDL counsel * * *." NPC Reply at 35 n.22. Not true. In fact, NPC *denied* Zelle Hofmann access to this database; while Zelle Hofmann reviewed documents and provided information to MDL plaintiffs for inclusion in the database, it was not given access to do its own research and queries. (Hagstrom Sur-Reply Aff. ¶ 5.) More to the point, even if Zelle Hofmann had the purported ability to access an NPC database on behalf of *Minnesota* clients as part of national coordinated discovery, this does not constitute "purposeful availment" by Zelle Hofmann of a Maryland forum for jurisdictional purposes. *See Burger King*, 471 U.S. at 472 (requiring purposeful direction of activities at forum). NPC has cited no authority to the contrary.

NPC argues that Zelle Hofmann representatives attended a seminar conducted by MDL Lead Counsel, and that counsel who attended the seminar agreed to be bound by the protective order in MDL 1332. Whether MDL counsel led a "seminar" on Microsoft litigation is utterly irrelevant to the question of whether the Court may exercise jurisdiction over Zelle Hofmann on NPC's *quantum meruit* claim. The issue is whether a seminar presented by counsel—not the Court—about Microsoft litigation in state and federal court thereby invests this Court with general jurisdiction over all attendees. Clearly, it does not. As for the protective order,[6] by its own terms the order allows counsel in other actions to obtain documents through coordinated discovery, provided they execute an amendment agreeing to be subject to this Court's jurisdiction "*for the purpose of enforcing the terms of the Stipulated Protective Order.*" (Hagstrom Surreply Aff. Ex. 2 ¶ 3 and Ex. 3. ¶ 4 (emphasis added).) This consent to jurisdiction is appropriately narrow. Zelle Hofmann is aware of no authority, and NPC has not cited any,

---

[6] Notably, NPC misrepresents the contents of its own exhibit. The letter to counsel who were to attend the seminar states that counsel would be "expected to read and understand" the complaint and protective order. *See* Heuck Aff. Ex. 1. It says nothing about agreeing to be bound as a condition of participating in the seminar.

which states that a law firm, acting on behalf of clients, which obtains access to documents covered by a protective order thereby "agree[s] to be [personally] subject to the Court's jurisdiction," NPC Reply at 35, for purposes unrelated to enforcement of the protective order. Such a result would clearly violate due process.

### 3.   The "Location of the Transferor Court" is Irrelevant to NPC's Motion.

NPC argues that this Court has personal jurisdiction over Zelle Hofmann because the firm filed a suit in Minnesota state court that was removed and ultimately transferred to this Court. This argument is both irrelevant and incorrect. First, as has been repeatedly emphasized, the removed/transferred case (*Rubbright*) is not at issue here. The *Gordon* case, which was venued in Minnesota state court, is. Therefore, even if it were true that this Court has the same authority as the District of Minnesota over Zelle Hofmann *for purposes of Rubbright*, that authority would not extend to ordering a payment of fees from the *Gordon* case, which was not before either court.[7]

Second, NPC ignores *Showa Denko*, which is controlling authority in this Circuit. The consolidation of cases by the Judicial Panel "is merely procedural and does not expand the jurisdiction of the district court to which the cases are transferred." 953 F.3d at 165. The *Gordon* plaintiffs were before neither this Court nor the Minnesota federal court. More importantly, Zelle Hofmann was not a party before either court.

---

[7] NPC appears to suggest that if *any* case was filed in Minnesota and transferred to another judicial district, then the transferee court has personal jurisdiction over all lawyers licensed in Minnesota. (This argument appears to be the only rationale for discussing the *Neilsen, Tinkham, Jaffe*, and *Klein* cases on page 36 of NPC's Reply. Zelle Hofmann was not counsel in any of those cases. (Hagstrom Surreply Aff. ¶ 8.)) Clearly, this argument would eviscerate due process and cannot be correct, and NPC cites no supporting authority for the proposition.

Third, none of the three cases NPC cites supports its jurisdictional arguments.   The *Telectronics* case deals with personal jurisdiction over a *defendant* in a transferred case.   *See In re Telectronics Pacing Systems, Inc.*, 953 F. Supp. 909 (S.D. Ohio 1997) (finding jurisdiction in transferee district over Australian defendants who were not subject to personal jurisdiction in all districts).   In other words, this Court has jurisdiction *over Microsoft*, the defendant, here.   This proposition, while uncontroversial, is irrelevant to NPC's argument.   Zelle Hofmann is not a defendant here, and the *Telectronics* case did not address jurisdiction over counsel.   Notably, the holding of the *Telectronics* court was limited to jurisdiction in the *specific case* that was transferred, not all cases:

> Plaintiffs argue that § 1407 allows the Court to exercise personal jurisdiction over the Australian Defendants *in all of the cases if a transferor court had jurisdiction over them in any individual case. No court has ever reached such a conclusion*, and it is unlikely that Congress intended for § 1407 to expand personal jurisdiction in this way.

*Id.* at 914  (emphasis added).   In short, *Telectronics* confirms that this Court may not exercise jurisdiction over Zelle Hofmann, a non-party.

The *In re FMC Corp. Patent Litig.*, 422 F. Supp. 1163 (J.P.M.L. 1976) case dealt with whether a proposed transferee district was an improper venue and lacked *in personam* jurisdiction over all defendants.   Citing 28 U.S.C. § 1407, the court held that a Section 1407 transferee court has the same jurisdiction over the *defendant* and power over pretrial proceedings as the transferor court.   *Id.* at 1165.   Again, Zelle Hofmann is not a defendant here, and the case truly at issue (*Gordon*) is not a case that was transferred to this Court.

The *Maricopa County v. Am. Petrofina, Inc.*, 322 F. Supp. 467 (N.D. Cal. 1971) case, which NPC cites without explanation or even a parenthetical summary of the holding, is likewise

inapposite.   The court's finding of personal jurisdiction over a nonresident defendant was premised on conspiracy jurisdiction, and the case was later abrogated on that basis.   *See Karsten Mfg. Corp. v. United States Golf Ass'n*, 728 F. Supp. 1429, 1434 (D. Ariz. 1990) (noting abrogation of *Maricopa County*).   In short, NPC's argument on the jurisdiction of transferee courts is misdirected and irrelevant.

**B.   NPC HAS FAILED TO SHOW THAT ITS MOTION IS NOT BARRED BY THE DOCTRINES OF LACHES AND WAIVER AND BY MINNESOTA'S ETHICAL RULES.**

An affirmative defense may be raised by a Rule 12(b)(6) motion.   *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005) (statute of limitations defense may be raised by 12(b)(6) motion if time bar is apparent).[8]   NPC's argument that Zelle Hofmann's arguments concerning laches, waiver, and the effect of Minnesota's ethics rules are "premature," NPC Reply at 37-38, is incorrect.[9]

**1.   NPC Has Not Contradicted the Facts Establishing Laches and Waiver.**

NPC does not deny that it was invited to submit a fee claim in Minnesota.   Indeed, NPC admits it consciously chose not to do so, as a "strategic decision," because it purportedly believed that its efforts "were likely futile" and "had very little chance of success."   NPC Reply at 40.   This "strategic decision" does not excuse NPC's failure to submit a fee petition in

---

[8] Of course, as established in Zelle Hofmann's opening brief, NPC has filed no complaint and is therefore entitled to no relief.   Thus, NPC's argument that Zelle Hofmann is "bound" by the "facts alleged" in NPC's motion, NPC Reply at 38, is nothing short of bizarre.   There is no complaint.   Therefore, there are no well-pleaded facts.   NPC's argument highlights the procedural preposterousness of its frivolous motion.

[9] NPC also states that State Plaintiffs' Counsel did not comment on NPC's unjust enrichment and *quantum meruit* theories.   NPC Reply at 26.   This statement is false.   Zelle Hofmann addressed both these theories in its opposition brief.   *See* Zelle Hofmann Opp. Memo. at 19 n.11 & 21.

Minnesota. The Minnesota court's order required all counsel which claimed to have provided benefit to the Minnesota class to submit a fee petition by July 21, 2004. (Hagstrom Opp. Aff. Ex. 3 at 5.) Just as a litigant in a trial court is required to make a record for appeal by making objections, and cannot make a "strategic decision" not to object even if it believes the objection would be "futile," so too was NPC required to submit its petition to the court in Minnesota by the date specified in the order.[10]

NPC's failure to submit a fee petition under these circumstances is an unreasonable delay for purposes of the laches defense. NPC had knowledge of a court deadline, and (by its own admission) deliberately ignored that deadline so it could try its luck in a different forum. NPC then waited until after final judgment in *Gordon* and until after fees had been distributed to bring its motion in this Court. (Hagstrom Opp. Aff. ¶¶ 24-25.) Clearly, NPC's delay resulted from a *deliberate* decision not to pursue fees in the *Gordon* case. This conduct also constitutes waiver: Apart from its admission of its "strategic decision," NPC's intent to relinquish its right to seek fees from *Gordon* for waiver purposes can be inferred from its knowing failure to submit fees. *See Hedged Investment Partners, L.P. v. Norwest Bank Minnesota, N.A.*, 578 N.W.2d 765, 771 (Minn. Ct. App. 1998) (intentional relinquishment of known right required for waiver can be inferred from a party's conduct). Regardless of NPC's supposed "strategic" thinking, it

---

[10] NPC falsely argues that Zelle Hofmann opposed a fee petition by NPC in Minnesota state court. NPC Reply at 1 n.1 ("SPC argued that NPC" have no right to claim fees in state court). In fact, as NPC acknowledges, it never submitted a fee petition in Minnesota. Moreover, an uncontroverted affidavit establishes that Zelle Hofmann would have carefully considered any petition for fees that were reasonable and necessary to the prosecution of the Minnesota Microsoft Litigation (assuming ethical issues could have been satisfied). (Hagstrom Opp. Aff. ¶ 6.) Such fees, of course, would have been awarded by the Minnesota Court and *paid by Microsoft, not Zelle Hofmann*. The Minnesota Court and Minnesota Lead Counsel were never given the opportunity to review and support any alleged NPC time benefiting the Minnesota class.

knowingly and intentionally waived its right to seek fees in the *Gordon* action when it had the opportunity to do so.

Unbelievably, NPC argues that the prejudice Zelle Hofmann suffers from NPC's delay is "irrelevant" and "spurious." NPC Reply at 40. NPC's motion, which requests an order forcing Zelle Hofmann to disgorge millions of dollars in fees earned for tens of thousands of hours worked by Zelle Hofmann attorneys, is itself direct evidence to the contrary. Minnesota's antitrust statute contains a fee shifting provision. Minn. Stat. § 325D.57. Zelle Hofmann and the other Minnesota plaintiffs' counsel were compensated for their work—and only their work—on a lodestar basis. (Hagstrom Surreply Aff. ¶¶ 2-3.) The source of the attorney fees was direct payment *by Microsoft*, not a common fund or other fixed pot of money from which some percentage was available for attorneys' fees. When NPC did not submit a fee petition, Microsoft and Minnesota plaintiffs' counsel reached an agreement on fees in the *Gordon* action. (Hagstrom Opp. Aff. ¶¶ 20-21.) Had NPC submitted a well-founded fee petition in *Gordon*, the total fees awarded would have been higher and NPC would keep its award. It is entirely improper for NPC to claim it "benefited" the *Gordon* class and seek fees not from Microsoft under § 325D.57, nor from the *Gordon* plaintiffs, but from counsel who prosecuted the *Gordon* case.

The fee agreement with Microsoft for the *Gordon* action was reached in reliance on the absence of competing or additional claims from NPC. (Hagstrom Opp. Aff. ¶ 21.) Had Zelle Hofmann known that NPC would attempt to capture fees from Zelle Hofmann's work in *Gordon* after the fact, Zelle Hofmann would have negotiated differently. It would not have disbursed fees to co-counsel. (Hagstrom Surreply Aff. ¶ 9.) It could have sought an enforceable declaratory

judgment on fees.  But NPC's "strategic" decision deprived Zelle Hofmann of all its options. *Now*, after final judgment and the distribution of fees to co-counsel, NPC is trying to claim a huge portion of the fees Zelle Hofmann received for its own work.  This situation is manifestly prejudicial to Zelle Hofmann.

If NPC believed its work conferred a benefit on the Minnesota class in *Gordon*, it was required by Minnesota law and court order to submit a fee petition by July 21, 2004.  It did not do so.  If its work did not confer a benefit on the Minnesota class, it was never entitled to a share of the fees from *Gordon.*  In either case, NPC's motion should be denied.

### 2.     NPC Has Failed to Overcome the Bar of Minn. R. Prof. Conduct 1.5(e).

Minnesota Rule of Professional Conduct 1.5(e) bars lawyers from different firms from dividing a fee unless certain conditions are met.  NPC admits that its fee motion does not meet these conditions, but argues that the rule does not apply because NPC is seeking to recover fees directly from Zelle Hofmann and the other state plaintiffs' counsel, "not from any client."  NPC Reply at 42.  Rule 1.5(e), by its plain wording, bars the relief NPC seeks, but according to NPC, "the rule's purpose and context" do not prohibit NPC from splitting fees in this case.  NPC Reply at 42.  This attempt to circumvent the rule is based on semantics, not substance.

NPC claims that it performed work that benefited the Minnesota class—i.e., the "client"—but believes that the client need not have notice of its claim or the opportunity to object.  The rule itself, and the order of the court in *Gordon*, state otherwise.  (*See* Hagstrom Opp. Aff. Ex. 3 at 3 (Order preliminarily approving settlement "subject to the right of any member of the Minnesota Class * * * to present any opposition to the request(s) for attorneys' fees and costs submitted by Lead Counsel for the Minnesota Class *or by any other counsel * *

\*.") (emphasis added).)  Moreover, the fact that under Minnesota's fee shifting statute Microsoft was required to pay the fees to Zelle Hofmann on behalf of the client does not insulate Zelle Hofmann or NPC from the prohibition of Rule 1.5(e).

The sole case NPC cites to establish that Rule 1.5(e) does not apply to a fee dispute between counsel is a case from South Carolina interpreting a different (and much stricter)[11] California rule of professional conduct.  *See Joye v. Heuer*, 813 F. Supp. 1171, 1173-74 (D. S. C. 1993).  The court in *Joye* held that "a valid contract [was created] between [the attorneys]" in that case.  *Id.* at 1173.  Here, notably, NPC *admits* that "*no enforceable fee agreement exists.*" NPC Reply at 43 (emphasis added).

NPC further argues that, even if Rule 1.5(e) applies, NPC could still recover in *quantum meruit*.  Three of the four cases NPC cites either do not apply or actually do not hold what NPC says they hold.[12]  In these cases *quantum meruit* is sought from the client for whom a terminated attorney performed legal services.  Zelle Hofmann was never NPC's client.  The fourth case, *Daynard v. Ness, Motley, Loadotl, Richardson & Poole, P.A.*, 178 F. Supp. 2d 9 (D. Mass. 2001)

---

[11] That rule required, *inter alia,* that the client consent *in writing* to the proposed fee division after a full disclosure is made in writing.  See *Joye,* 813 F. Supp. at 1174 n.1.

[12] *Nordling v. N. States Power Co.,* 478 N.W.2d 498, 501 (Minn. 1991) merely restates the general rule that a discharged attorney may recover from the client in *quantum meruit* for the value of services rendered up to the time of discharge.  The same is true of *Glick v. Barclays de Zoete Wedd, Inc.,* 692 A.2d 1004 (N.J. Super. 1997.) That principle is inapplicable to a dispute between counsel.  Zelle Hofmann is not NPC's client.  (Of course, to the extent that NPC's fee recovery would ultimately be "from the client," then Rule 1.5(e) clearly applies.)  The *Glassman Construction* case, on which NPC relies for the proposition that state law is not applicable to federal equity proceedings, actually states, "in a diversity action a federal court will apply state law with regard to the allowance of attorney fees."  *Glassman Constr. Co. v. Maryland City Plaza, Inc.,* 371 F. Supp. 1154, 1162 (D. Md. 1974).  The court acknowledges that "[u]nder equity principles a federal court may award attorney fees even if state procedural rules do not permit it," but cautions that "[t]his federal equity principle is applied only in 'exceptional cases and for dominating reasons of justice.'"  Id. at 1163 (emphasis added; citation omitted).  NPC has not, of course, established that its motion meets this standard.

14

is factually distinct.   There, a law professor sought to enforce an alleged oral fee-splitting agreement with various law firms that represented state governments in litigation against the tobacco industry.   (Again, NPC admits there is no fee agreement here.)   The defendants argued that any alleged agreement was unenforceable because it violated the ethical rules of Illinois (an argument the court took under advisement) and also that it could not be enforced on *quantum meruit* grounds.   The court did note that several states (Minnesota not among them) allow recovery on a *quantum meruit* basis for fee-splitting agreements that would otherwise be unenforceable on public policy grounds.   However, the court did not conduct an exhaustive survey of national trends on *quantum meruit* in fee-splitting cases, nor did it address Minnesota law.

The court *did* address personal jurisdiction, however:

> Between 1993 and 1997, Daynard provided advice to the defendants.  No written contract detailed how Daynard would be compensated, but Daynard alleges that he and one of the Mississippi [lawyer] defendants shook hands in Chicago, Illinois in 1996 on an agreement whereby he would receive 5% of any attorneys' fees paid to the defendants as a result of the State Tobacco Litigation.  In 1997 and 1998, the tobacco industry agreed to settle the State Tobacco Litigation for billions of dollars.  Since then, the defendants have received millions of dollars in attorneys' fees and Daynard has received nothing.

> Daynard filed a complaint * * *.  The complaint seeks, among other things, enforcement of the oral fee-splitting agreement or, in the alternative, recovery on a quantum meruit basis.  The Mississippi defendants contested personal jurisdiction and did not answer the complaint.  After extensive briefing, jurisdictional discovery, and two hearings, the Court dismissed the Mississippi defendants for want of personal jurisdiction * * *.

*Id.* at 10 (citations to pleadings omitted).  The dispute now before the court is roughly analogous to the dispute in *Daynard* (except that there is no agreement here and no actual complaint, as there was in *Daynard*).

### CONCLUSION

This Court does not have jurisdiction over Zelle Hofmann to order disgorgement of the fees Zelle Hofmann (and other firms) obtained for their tens of thousands of hours of work representing Minnesota class members in the *Gordon* case.  While NPC argues that it provided "Herculean [sic] efforts and expenditures," NPC Reply at 44, at no point has NPC identified what those efforts and expenditures were, or how they benefited the *Gordon* plaintiffs.

Even if NPC actually had undertaken some effort to benefit the *Gordon* class, NPC failed to submit a fee petition in Minnesota by the deadline prescribed by court order.  NPC's motion should be denied as unfounded and lacking any factual or legal basis.

Dated: June 2, 2005

Respectfully submitted,

PORTER WRIGHT MORRIS & ARTHUR

By: _____/s/_____

    William P. McGrath, Jr.
        Bar No. 012220
        wmcgrath@porterwright.com
    Donald M. Barnes
    1919 Pennsylvania Avenue NW
    Suite 500
    Washington, DC  20006-3434
    202 778-3000 Telephone
    202 778-3063 Fax
ATTORNEYS FOR ZELLE, HOFMANN,
VOELBEL, MASON & GETTE LLP

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Surreply Memorandum of Zelle, Hofmann, Voelbel, Mason & Gette LLP Specially Appearing In Opposition To National Plaintiffs' Counsel's Motion For Attorney Fees was served this 2nd day of June, 2005 via the Court's electronic filing system and via first class mail, postage prepaid upon the following counsel:

Stanley M. Chesley
Robert Heuck II
Waite, Schneider, Bayless & Chesley, LPA
1513 Fourth & Vine Tower
One West Fourth Street
Cincinnati, OH 45202

Michael D. Hausfeld
Daniel A. Small
Cohen Milstein Hausfeld & Toll PLLC
1110 New York Avenue NW
West Tower, Suite 500
Washington, DC 20005

Edmund L. Carey
Barrett, Johnston & Parsley
217 Second Avenue, North
Nashville, TN 37201

R. Stephen Berry
Berry & Leftwich
171 Pennsylvania Avenue NW
Washington, DC 20006

Joshua I. Barrett
DiTrapano Barrett & DiPiero PLLC
604 Virginia Street, East
Charleston, WV 25301

Alan M. Grunspan
Kaufman Dickstein & Grunspan PA
Wachovia Financial Center, Suite 4650
200 South Biscayne Boulevard
Miami, FL 33131

Joshua R. Treem
Andrew M. Dansicker
Schulman, Treem, Kaminkow, Gilden &
    Ravenell, PA
410 East Pratt Street, Suite 1800
Baltimore, MD 21202-3004

Steven F. Benz
Kellogg Huber Hanson Todd & Evans
1615 M Street NW, Suite 400
Washington, DC 20036

Thomas C. Wilcox
Law Office of Thomas C. Wilcox
1426 16th Street NW, Suite 502
Washington, DC 20036

Richard D. Heideman
Heideman Lezell Nudelman & Kalik, PC
1146 19th Street NW, Fifth Floor
Washington, DC 200036

Leonard B. Simon
Susan G. Taylor
Lerach Coughlin Stoia Geller Rudman & Robbins
401 B Street, Suite 1700
San Diego, CA  92101

Daniel Hume
Kirby, McInerney & Squire LLP
830 Third Avenue, 10th Floor
New York, NY  10022

Robert L. Lieff
Michelle C. Jackson
David S. Stellings
Lieff Cabraser Heiman & Bernstein LLP
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339

_____/s/_____

William P. McGrath, Jr.

UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | | |
|---|---|---|
| IN RE MICROSOFT CORP.<br>ANTITRUST LITIGATION | : <br> : <br> : <br> : | MDL DOCKET NO. 1332<br>Hon. J. Frederick Motz |
| This Document Relates To: | : <br> : | |
| ALL CONSUMER CASES | : <br> : <br> : <br> : | |

## SURREPLY AFFIDAVIT OF RICHARD M. HAGSTROM

COUNTY OF HENNEPIN )
                   ) ss.
STATE OF MINNESOTA )

Richard M. Hagstrom, being first duly sworn, deposes and says as follows:

1.    I am a partner at Zelle, Hofmann, Voelbel, Mason & Gette LLP ("Zelle Hofmann"). I submit this affidavit in support of the Surreply Memorandum of Zelle Hofmann Specially Appearing in Opposition to National Plaintiffs' Counsel's Motion for Attorney Fees in the above-captioned action.

2.    Zelle Hofmann was co-lead counsel in the case of *Gordon v. Microsoft Corp.*, Civil No. 00-5994, in the district court of Hennepin County, Minnesota. On July 21, 2004, Minnesota Class Counsel submitted a Petition for Attorney's Fees and Expenses in the *Gordon* matter. Zelle Hofmann claimed a lodestar for actual hours expended of $10,770,994. This figure represented 31,241 hours of work performed by 67 different individuals, in multiple

offices, over the four-and-a-half year period from November 1999 to April 2004. All Minnesota co-counsel worked almost 60,000 hours to obtain the successful result in *Gordon*.

3.      Zelle Hofmann was awarded fees in the *Gordon* case for the time spent by Zelle Hofmann attorneys and staff. Zelle Hofmann was not awarded fees for any time allegedly expended by NPC.

4.      Exhibit 1 is a true and correct copy of the order of the Judicial Panel on Multidistrict Litigation transferring various cases, including *Rubbright Group v. Microsoft Corp.*, to MDL 1332.

5.      Although I was named a member of the expert committee for purposes of coordinated discovery in the state and federal Microsoft cases, I was excluded from expert committee activities. Zelle Hofmann was also denied access to the Internet database of Microsoft-related documents. While Zelle Hofmann reviewed documents and provided information to MDL plaintiffs for inclusion in the database, it was not given access to do its own research and queries.

6.      Exhibit 2 is a true and accurate copy of the Stipulated Revised Protective Order in MDL 1332.

7.      Exhibit 3 is a true and accurate copy of the Agreement Concerning Confidentiality for counsel in related actions, attached as Exhibit A to the Stipulated Revised Protective Order.

8.      Zelle Hofmann was not counsel in any of the following cases from the District of Minnesota listed on page 36 of the National Plaintiffs' Counsel's Reply Memorandum: *Neilsen*

2

*v. Microsoft Corp.*, No. 0:99-2037; *Tinkham v. Microsoft Corp.*, No. 0-00-416; *Jaffe v. Microsoft Corp.*, No. 0-00-705; and *Klein v. Microsoft Corp.*, No. 0-00-469.

9.      Had I known that the NPC would file a motion seeking fees from the *Gordon* case after final judgment in that case, Zelle Hofmann would not have distributed fees to the firms that had assisted in preparing the case for trial.   Having made a distribution, NPC's Motion, if successful, would be highly prejudicial to Zelle Hofmann.

10.     Neither NPC nor any of its member firms ever appeared in the *Gordon* action, nor did NPC or any member firm represent any party in the *Gordon* action.

11.     I swear and certify under penalty of perjury and pursuant to the laws of the State of Minnesota that the preceding is true and correct.

Richard M. Hagstrom

Subscribed and sworn to before me
this 2nd day of June, 2005.

Notary Public

293852v1

SHEILA M. STENDER
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2010

3

# EXHIBIT 1



A CERTIFIED TRUE COPY

APR 25 200

ATTEST *PRandall*
FOR THE JUDICIAL PANEL OF
MULTIDISTRICT LITIGATION

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

APR 25 2000

FILED
CLERK'S OFFICE

*DOCKET NO. 1332*

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE MICROSOFT CORP. WINDOWS OPERATING SYSTEMS ANTITRUST LITIGATION

### BEFORE JOHN F. NANGLE, CHAIRMAN, WILLIAM B. ENRIGHT, CLARENCE A. BRIMMER, JOHN F. GRADY, BAREFOOT SANDERS, LOUIS C. BECHTLE* AND JOHN F. KEENAN, JUDGES OF THE PANEL

### TRANSFER ORDER

Before the Panel are four motions or cross-motions for coordinated or consolidated pretrial proceedings that are brought pursuant to 28 U.S.C. §1407 and currently encompass some or all of the 27 actions listed on the attached Schedule A and pending in seventeen districts as follows: four actions in the District of District of Columbia; three actions in the Southern District of Florida; two actions each in the Eastern District of Michigan, the District of Minnesota, the Southern District of New York, the Southern District of Ohio and the Eastern District of Wisconsin; and one action each in the Northern District of Alabama, the District of Arizona, the Southern District of California, the Southern District of Illinois, the District of Kansas, the Eastern District of Louisiana, the District of South Carolina, the Eastern District of Tennessee, the District of Vermont, and the Southern District of West Virginia.[1]   The Section 1407 moving parties are arrayed as follows: 1) sole common defendant Microsoft Corporation (Microsoft ), whose motion seeks centralization of all 27 actions in the Western District of Washington or, alternatively, the Northern District of Illinois; 2) plaintiff

---

*Judge Bechtle took no part in the decision of this matter.

[1]Seven additional actions that were subject to at least one of the Section 1407 motions have been dismissed or remanded to state court: *Shelby Hartman, et al. v. Microsoft Corp.*, S.D. Florida, C.A. No. 1:99-3401; *Paul Rothstein v. Microsoft Corp.* N.D. Illinois, C.A. No. 1:99-8346; *Harvey Melnick, et al. v. Microsoft Corp.*, D. Maine, C.A. No. 2:99-377; *Burke Cueny v. Microsoft Corp.*, E.D. Michigan, C.A. No. 2:99-76057; *James Edwards v. Microsoft Corp.* D. New Mexico, C.A. No. 6:99-1476; *Daniel Sherwood, et al. v. Microsoft Corp.*, M.D. Tennessee, C.A. No. 3:99-1191; and *Charles T. Clark, Jr. v. Microsoft Corp.*, W.D. Tennessee, C.A. No. 1:99-1334. Accordingly, the question of Section 1407 transfer with respect to these actions is moot at this time. Also, various parties have notified the Panel of the pendency of more than twenty additional, potentially related actions pending in federal district courts. These actions, any other newly filed actions that come to the Panel's attention, and, for that matter, any of the dismissed actions subject to the original Section 1407 motion that may be reopened, will be treated as potential tag-along actions. *See* Rules 7.4 and 7.5, R.P.J.P.M.L., 181 F.R.D. 1, 10-11 (1998).

- 2 -

A CERTIFIED TRUE COPY

eLeaders, Inc., in one of the District of District of Columbia actions, whose motion seeks centralization in the District of Columbia district of its action and the Alabama and Louisiana actions; 3) plaintiffs Linda Kloth, *et al.*, in the two Southern District of Ohio actions, whose motion seeks centralization in the Ohio district of only one of the Ohio actions, the Alabama action, and the District of Columbia *eLeaders* action; and 4) plaintiffs Precision Billing Service, Inc., *et al.*, in the Southern District of Illinois action, whose motion seeks centralization in the Illinois district of their action and the Alabama action.[2] All actions are brought, in whole or in part, on behalf of customers of Microsoft by plaintiffs who allege that Microsoft violated federal or state antitrust laws. Objections to transfer, generally, are raised with respect to transfer of particular actions: 1) plaintiffs in certain actions or potential tag-along actions who contend that actions removed by Microsoft from state to federal court should be excluded from transfer because there is no federal jurisdiction and the actions should be remanded to state court; 2) plaintiffs in certain actions who contend that actions brought on behalf of indirect purchasers should not be centralized or should be centralized separately from actions brought on behalf of direct purchasers; and 3) the non-Microsoft parties (plaintiffs Gravity, Inc., *et al.*, and defendants Compaq Computer Corp., Dell Computer Corp., and Packard Bell NEC) in one District of District of Columbia action (*Gravity*) that is the only action naming defendants in addition to Microsoft, who object to inclusion of *Gravity* in 1407 proceedings. Finally, plaintiffs in the Eastern District of Louisiana action have suggested that the Louisiana district should be selected as the transferee forum.

On the basis of the papers filed and the hearing held, the Panel finds that the actions in this litigation involve common questions of fact, and that centralization under Section 1407 in the District of Maryland before Chief Judge J. Frederick Motz will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. All actions arise out of the same nucleus of operative facts pertaining to Microsoft's alleged antitcompetitive conduct in a purported market for personal computer operating systems. Accordingly, each action raises similar questions of market definition, the existence of monopoly power, the fact and significance of Microsoft's alleged anti-competitive conduct, and the existence and scope of any antitrust injury suffered by plaintiffs. Relevant discovery, including expert testimony, will overlap substantially in each action. Centralization under Section 1407 is thus necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings (particularly with respect to overlapping class certification requests), and conserve the resources of the parties, their counsel and the judiciary.

Various plaintiffs' principal objection to Section 1407 transfer at this time is rooted in their contention that the Panel's decision should be stayed pending resolution of motions to remand to state court that are pending in their actions. We note, however, that jurisdictional and remand motions can be presented to and decided by the transferee judge. *See, e.g., In re Ivy*, 901 F.2d 7 (2nd Cir. 1990); *In re Air Crash Disaster at Florida Everglades on December 29, 1972*, 368 F.Supp. 812, 813 (J.P.M.L. 1973).

---

[2] Much of the differences among the number of actions subject to the various motions seems to be in large part attributable to the various movants' awareness or lack of awareness of the pendency of related actions.

- 3 -

Other parties that either oppose inclusion of their respective action in Section 1407 proceedings or seek creation of two separate multidistrict dockets have argued, *inter alia*, that such an approach is necessary because 1) their action involves additional unique issues, parties or legal theories; and/or 2) centralization of all actions would be unduly burdensome. We are not persuaded by these contentions. We point out that transfer under Section 1407 does not require a complete identity or even majority of common factual issues as a prerequisite to transfer. Nor is the presence of additional or differing legal theories significant when the underlying actions still arise from a common factual core. We observe that transfer under Section 1407 has the salutary effect of placing all actions in this docket before a single judge who can formulate a pretrial program that: 1) allows discovery with respect to any non-common issues to proceed concurrently with discovery on common issues, *In re Joseph F. Smith Patent Litigation*, 407 F. Supp. 1403, 1404 (J.P.M.L. 1976); and 2) ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties. Finally, to any parties who believe that the uniqueness of their particular situation or the type of their claims renders continued inclusion of their action in MDL-1332 unnecessary or inadvisable, we point out that whenever the transferee judge deems remand of any claims or actions appropriate, procedures are available whereby this may be accomplished with a minimum of delay. *See* Rule 7.6, R.P.J.P.M.L., 181 F.R.D. 1, 11-13 (1998).

Given the range of locations of parties and witnesses in this docket and the geographic dispersal of constituent actions, it is clear that no single district emerges as a nexus. Thus we have searched for a transferee judge with the ability and temperament to steer this complex litigation on a steady and expeditious course, a quest that has encompassed virtually the entire corps of federal judges. By centralizing this litigation in the District of Maryland before Chief Judge Motz, a judge with considerable experience as a transferee judge for multidistrict litigation, we are confident that we are entrusting this important and challenging assignment to an able jurist who has the added advantage of sitting in an accessible, metropolitan district equipped with the resources that this complex docket is likely to require.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. §1407, the actions on the attached Schedule A be, and the same hereby are, transferred to the District of Maryland and, with the consent of that court, assigned to the Honorable J. Frederick Motz for coordinated or consolidated pretrial proceedings.

FOR THE PANEL:

John F. Nangle
Chairman

# SCHEDULE A

MDL-1332 — In re Microsoft Corp. Windows Operating Systems Antitrust Litigation

### Northern District of Alabama

Blaine Cox, et al. v. Microsoft Corp., C.A. No. 1:99-3009   JFM-00-1242

### District of Arizona

Wayne Mims v. Microsoft Corp., C.A. No. 2:99-2245   JFM-00-1243

### Southern District of California

Clay Tyler, et al. v. Microsoft Corp., C.A. No. 3:99-2602   JFM-00-1244

### District of District of Columbia

Gravity, Inc., et al. v. Microsoft Corp., et al., C.A. No. 1:99-363   JFM-00-1247
eLeaders, Inc. v. Microsoft Corp., C.A. No. 1:99-3090   JFM-00-1248
Franklin L. DeJulius v. Microsoft Corp., C.A. No. 1:99-3148   JFM-00-1249
Paul A. Deiter v. Microsoft Corp., C.A. No. 1:99-3275   JFM-00-1250

### Southern District of Florida

Eric S. Lazarus v. Microsoft Corp., C.A. No. 0:99-7527   JFM-00-1251
To The Rescue Comprehensive Computer v. Microsoft Corp., C.A. No. 1:99-3301   JFM-00-1252
Elvarado Baptiste, et al. v. Microsoft Corp., C.A. No. 9:99-9076   JFM-00-1253

### Southern District of Illinois

Precision Billing Services, Inc., et al. v. Microsoft Corp., C.A. No. 3:99-896   JFM-00-1256

### District of Kansas

Elizabeth A. Wilson v. Microsoft Corp., C.A. No. 5:99-4192   JFM-00-1257

### Eastern District of Louisiana

Jay S. Quigley, et al. v. Microsoft Corp., C.A. No. 2:99-3420   JFM-00-1258

### Eastern District of Michigan

D's Pet Supplies, Inc. v. Microsoft Corp., C.A. No. 2:99-76056   JFM-00-1259
David Bach v. Microsoft Corp., C.A. No. 2:99-76086   JFM-00-1260

- 2 -

**MDL-1332 Schedule A (Continued)**

    District of Minnesota

Rubbright Group v. Microsoft Corp., C.A. No. 0:99-2017   JFM-00-1261

Steven Neilsen v. Microsoft Corp., C.A. No. 0:99-2037   JFM-00-1262

    Southern District of New York

Raymond Pryor v. Microsoft Corp., C.A. No. 1:99-12161   JFM-00-1263

Seastrom Associates, Ltd. v. Microsoft Corp., C.A. No. 1:99-12162   JFM-00-1264

    Southern District of Ohio

Linda Dameron Kloth, et al. v. Microsoft Corp., C.A. No. 1:99-1043   JFM-00-1265

Linda Dameron Kloth, et al. v. Microsoft Corp., C.A. No. 2:99-1276   JFM-00-1266

    District of South Carolina

Chris Campbell v. Microsoft Corp., C.A. No. 2:99-4165   JFM-00-1267

    Eastern District of Tennessee

Denise Davenport v. Microsoft Corp., C.A. No. 3:99-660   JFM-00-1268

    District of Vermont

Sara Cheeseman, et al. v. Microsoft Corp., C.A. No. 2:99-396   JFM-00-1269

    Southern District of West Virginia

Harold A. Phillips v. Microsoft Corp., C.A. No. 2:99-1080   JFM-00-1271

    Eastern District of Wisconsin

Matthew W. O'Neill v. Microsoft Corp., C.A. No. 2:99-1477   JFM-00-1272

Robert Weinke v. Microsoft Corp., C.A. No. 2:99-1505   JFM-00-1273

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IN RE MICROSOFT CORP.
ANTITRUST LITIGATION

MDL No. 1332

## STIPULATED REVISED PROTECTIVE ORDER

1. The parties to this action, having determined that certain documents and information produced or to be produced during discovery in this litigation should be kept confidential in order to protect the legitimate business interests of the parties and their customers, business partners, and other persons, including non-parties to this action, and good cause having been shown, it is this _5th_ day of _September_, 2000, by the United States District Court for the District of Maryland, ORDERED:

### Definitions

2. For the purposes of this Order:

(a) "Document" includes all tangible written, recorded or graphic material, and intangible data files, such as magnetic computer files, whether produced or created by a party or another person, and whether produced pursuant to any state or federal discovery rules, by agreement or otherwise, and includes, without limitation, documents, interrogatory answers, responses to requests for admission, deposition transcripts and exhibits, trial transcripts or other court transcripts, pleadings, motions,

affidavits, declarations, affirmations, briefs, or other filings, and any portion of any of the above;

(b) "Confidential Information" means any trade secret or other confidential research, design, development, financial, or commercial information (as defined by federal law) contained in any document or testimony;

(c) "Highly Confidential Information" shall include any trade secret or other confidential research, development, or commercial information contained in any document or deposition testimony as such terms are used in Rule 26(c)(7) of the Federal Rules of Civil Procedure and any applicable case law interpreting Rule 26(c)(7) that is entitled to a higher level of protection due to its commercial sensitivity.

All protections applicable under this Order to Confidential Information apply as well to Highly Confidential Information.

(d) "Party" means a named plaintiff or defendant in either the consolidated or coordinated action, as defined in Pretrial Order No. 1.

(e) "Third party" means any natural person, partnership, corporation, association, or other legal entity not named as a party to this action.

**Permissible Use of Confidential or Highly Confidential Information**

3. All persons obtaining access to Confidential or Highly Confidential Information in this action shall use the documents or information only for preparation and trial of this action, including any appeal and retrial and shall not use such documents or information for any other purpose, including, without limitation, for business or governmental purposes or for any administrative or other judicial proceeding, except that, subject to the requirements of ¶¶ 13 and 14, counsel in any action arising out of the same

facts and circumstances alleged in this action may obtain access to such documents provided he or she agrees to ¶¶ 24 and 25 of Pretrial Order No. 1 and executes an agreement, in the form attached hereto as Exhibit A, to be bound by the terms of this Order and be subject to this Court's jurisdiction for enforcement of this Order. Any further disclosure by such counsel to anyone shall be permitted only after entry of, and subject to, a no-less restrictive protective order entered in any such action. This Order shall not restrict the use or disclosure of documents or information not obtained as a result of this action or otherwise publicly available.

4. Confidential or Highly Confidential Information shall not be copied or reproduced for use in this action except to the extent such copying or reproduction is reasonably necessary to the conduct of this action, and all such copies or reproductions shall be subject to the terms of this Order. If the duplicating process by which copies or reproductions of Confidential or Highly Confidential Information are made does not preserve the confidentiality designation that appears on the original documents, all such copies or reproductions shall be stamped "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" as appropriate.

### Designation of Confidential or Highly Confidential Information

5. Following the entry of this Order, a party or third party may designate documents or information provided as Confidential or Highly Confidential by placing on or affixing to a document containing such information (in such manner as will not interfere with the legibility thereof) the words "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" on each page of the document entitled to such designation.

6. A designation of confidentiality shall constitute a representation to the Court, made in good faith, that the Confidential or Highly Confidential Information is not reasonably believed to be already in the public domain, and that counsel believes that the information so designated constitutes Confidential or Highly Confidential Information as defined in this Order.

7. Transcripts of depositions taken in this action shall be given the protections afforded Highly Confidential Information under this Order for a period of ten (10) business days after a complete copy of the transcript has been provided to the deponent or his or her counsel in order to give the parties and third parties an opportunity to designate information contained in that transcript as Confidential or Highly Confidential Information.

8. No more than ten (10) business days after receipt of the complete transcript, counsel for any of the parties or the deponent may designate the portions of the deponent's deposition that qualify as Confidential or Highly Confidential Information by page number and line number. Such designation shall be communicated in writing to all parties. Any party or deponent may also designate specific testimony or transcript pages as Confidential or Highly Confidential Information by notice on the record at the deposition.

9. The burden of proving that any information is Confidential · or Highly Confidential shall remain with the party or third party making such designation.

### Permissible Disclosure of Confidential Information

10. Confidential Information may be disclosed only to:

-4-

(a) Current or former employees, officers, partners or directors of the parties, provided that counsel has a good faith basis for believing that, with respect to former employees, officers, partners, or directors (collectively, "former employees"), such former employees had access to said material when they held said positions, and provided that counsel must ascertain as soon as practicable whether such former employees had such access, and provided that upon the first indication that such former employee did not have such access, counsel must immediately refrain from any further disclosure to such former employees;

(b) Counsel of record for the parties to this action, including in-house attorneys, paralegal assistants and secretaries; outside attorneys, including partners, associates, paralegal assistants and secretaries; and employees or agents of counsel of record (including reputable litigation support firms) to the extent reasonably necessary to render professional services in this action and provided that such persons are actively engaged in the prosecution or defense of this action;

(c) Anticipated and actual deponents, trial witnesses and hearing witnesses in this action, but only as necessary to their testimony or anticipated testimony (and, in the case of trial or hearings, subject to the procedures to be established pursuant to ¶ 21);

(d) Persons identified in a document designated as Confidential as an author of the document in part or in whole, or persons to whom a copy of such document was sent prior to its production in this action;

(e) Court officials involved in this action;

- 5 -

(f) Court reporting personnel involved in taking or transcribing testimony in this action; and

(g) Outside consultants or experts retained for the purpose of assisting counsel in this action, provided that they comply with the requirements of ¶ 13.

11.    Highly Confidential Information may be disclosed only to:

(a) Current or former employees, officers, partners or directors of the party designating the material as Highly Confidential, provided that counsel has a good faith basis for believing that, with respect to former employees, officers, partners, or directors (collectively, "former employees"), such former employees had access to said material when they held said positions, and provided that counsel must ascertain as soon as practicable whether such former employees had such access, and provided that upon the first indication that such former employee did not have such access, counsel must immediately refrain from any further disclosure to such former employees;

(b) Outside counsel of record for the parties to this action, including attorneys, paralegal assistants and secretaries; Messrs. Thomas W. Burt, Richard J. Wallis and Steven J. Aeschbacher (internal lawyers at Microsoft) and Joe Banks (an internal paralegal at Microsoft); and employees or agents of counsel of record (including reputable litigation support firms) to the extent reasonably necessary to render professional services in this action and provided that such persons are actively engaged in the prosecution or defense of this action;

(i)    If the producing party objects to the disclosure of Highly Confidential Information to Messrs. Burt, Wallis, Aeschbacher or Banks, the producing party must serve and file a motion seeking to prevent such disclosure within five (5) calendar days after production of Highly

- 6 -

Confidential Information.  The moving party must show with particularity that it will be prejudiced by disclosure of the Highly Confidential Information to those persons.  If such motion is filed, there can be no disclosure to those persons until the motion is finally decided.

(ii)    Whenever Highly Confidential Information is disclosed to the Messrs. Burt, Wallis, Aeschbacher or Banks, those persons agree (1) to segregate documents containing such information from other documents in the Microsoft legal department; and (2) to maintain them in a locked office or room in the Microsoft legal department.

(c) Deponents, trial witnesses and hearing witnesses in this action (in the case of trial or hearings, subject to ¶ 21), but only in the course of actual examination and only as necessary to their testimony or anticipated testimony, and provided that such deponent or witness (and counsel to the deponent or witness, if not counsel to a party) may not retain or otherwise receive outside of the examination a copy of such information by virtue of this provision;

(d) Persons identified in a document designated as Highly Confidential as an author of the document in part or in whole, or persons to whom a copy of such document was sent prior to its production in this action;

(e) Court officials involved in this action;

(f) Court reporting personnel involved in taking or transcribing testimony in this action; and

(g) Outside consultants or experts retained for the purpose of assisting counsel in this action, provided that they comply with the requirements of ¶¶ 13 and 14.

12. Notwithstanding the provisions of ¶¶ 10 and 11 hereto, a person or party is free to disclose its own Confidential or Highly Confidential Information without

- 7 -

restriction. Moreover, nothing shall prevent disclosure beyond the terms of this Order if the party or other person designating the documents as Confidential or Highly Confidential expressly consents to such disclosure, either in writing or on the record of any proceeding in this action. Nothing in this paragraph shall limit a party's ability to argue that such disclosure constitutes a waiver of any applicable privilege.

### Confidentiality Declaration

13. Before any person described in ¶ 3 is given access to Confidential or Highly Confidential Information, the individual to whom disclosure is to be made shall first read this Order and then sign and date a declaration substantially in the form of the attached hereto Exhibit A. Before any person described in ¶ 10(g) or ¶ 11(g) is given access to Confidential or Highly Confidential Information, the individual to whom disclosure is to be made shall first read this Order and then sign and date a declaration substantially in the form of the attached hereto Exhibit B. A copy of such declarations shall be held by counsel of record for the party so disclosing the Confidential or Highly Confidential Information. The declarations executed pursuant to this paragraph shall only be discoverable upon order of the Court for good cause shown in the context of a bona fide dispute about compliance with this protective order.

(a) At least 7 business days prior to disclosing Confidential or Highly Confidential Information to counsel in other actions as described in ¶ 3, the person or party making such disclosure shall provide the designating party or non-party with a copy of the confidentiality declaration signed by the attorney to whom disclosure is being made; disclose the identity of the attorney; and disclose the related actions in which that attorney is acting as counsel.

- 8 -

(b) At least 14 days prior to disclosing to any person described in ¶ 11(g)
Highly Confidential information which constitutes materials that contain source code-
equivalent information (i.e., materials that reveal non-public aspects of the internal
design, internal architecture, or operation of software or other technologies), the person
or party making such disclosure shall provide counsel for the designating party with a
copy of the declaration signed by the expert or consultant to whom disclosure is being
made and shall disclose the identity the present employer of the expert or consultant. At
least 14 days prior to disclosing Highly Confidential information described in ¶ 2 (c) to
any person described in ¶ 11 (g) who is currently an employee of a known competitor of
the designating party, the person or party making such disclosure shall provide counsel
for the designating party with a copy of the declaration signed by the expert or consultant
to whom disclosure is being made and shall disclose the identity of the present employer
of the expert or consultant. The information provided to counsel for the designating party
pursuant to this provision shall be afforded Highly Confidential treatment and shall not
be used for any purpose other than monitoring compliance with this protective order or in
the context of a bona fide dispute regarding enforcement of this protective order. Except
as to issues related to enforcement of this protective order, the information disclosed
pursuant to this paragraph shall not be offered in evidence, used for impeachment or
offered in support of any argument going to the merits of claims or defenses or the
qualifications of expert witnesses. No potential expert or consultant disclosed under this
paragraph may be interviewed, deposed or retained by a party to whom disclosure was
provided, except that after such time as an expert has been publicly designated as a
testifying expert, discovery may be taken in accordance with applicable provisions of the

.9 -

Federal Rules of Civil Procedure.  No disclosure of information pursuant to this paragraph shall constitute a waiver of the protections of the work product doctrine.

14. A party designating documents or information as Confidential or Highly Confidential may object to the disclosure of such documents to any person described in ¶ 3 or ¶ 11(g) whose identity has been disclosed pursuant to ¶ 13(b) by giving written notice to the producing party and to all other parties.  If such dispute cannot be resolved within 10 business days of receipt of such notice, the objecting party may file a motion with the Court for a ruling seeking to prevent such disclosure.  No disclosure shall be made to the attorney, expert or consultant until the objecting party's motion has been decided.

15. Confidential or Highly Confidential Information may be disclosed to any person referred to in ¶¶ 10(a) or (c) or ¶¶ 11(a) or (c), in addition to the conditions specified in those subparagraphs, only on the condition that such person is provided with a copy of this Order and is informed that he or she is bound by this Order.  Such person shall be bound by this Order.  A party wishing to disclose Highly Confidential information to a person referred to in ¶ 11(c) prior to the time of deposition, hearing or trial may request permission from the designating party to make such disclosure.  If the designating party agrees, such disclosure shall be permitted.  If the parties cannot informally resolve the matter, application may be made to the Court for permission to make such disclosures.

16. Counsel for the parties to whom Confidential or Highly Confidential Information has been furnished shall be responsible for restricting disclosure in accordance with the provisions of this Order.

- 10 -

SEP 11 '00 17:08 FR PMRQW LLP          410 539 0489 TO 923#30347#3#1212 P.12/25

### Filing Under Seal

17. Confidential or Highly Confidential Information shall not be filed with the clerk except when required by Court rule or in connection with motions or applications submitted to the Court. Any Confidential or Highly Confidential Information, and any court papers containing or referring to Confidential or Highly Confidential Information (including, without limitation, deposition transcripts, exhibits, briefs, affidavits and affirmations), if filed, shall be filed under seal while in the clerk's office as long as the documents or information retain their status as Confidential or Highly Confidential. Where possible, only confidential portions of filings with the Court shall be filed under seal. A public copy of such court papers with all Confidential or Highly Confidential Information redacted therefrom may also be filed in the Clerk's office. Documents filed under seal shall be filed together with a simultaneous motion pursuant to Rule 105.11 of the Local Rules of the United States District Court for the District of Maryland and shall be placed in an envelope bearing the following legend:

> This document is filed under seal in *In Re Microsoft Corp. Antitrust Litigation*, MDL No. 1332, pursuant to Stipulated Protective Order entered on _____, 2000. The document contains Confidential Information [or Highly Confidential Information], within the meaning of the Order. Unless ordered by the Court or authorized in writing by the party filing this document, no person shall have access to the contents of this envelope.

This provision may be amended to provide for electronic filing under seal by subsequent order of the Court. If anyone challenges the f'ing of such documents under seal, the party that designated the information as Confidential or Highly Confidential bears the burden of establishing the propriety of such filing.

- 11 -

### Challenges to Designations of Confidentiality

18. Any party may after attempting to resolve the matter by agreement, apply by motion to the Court for a ruling that certain documents or testimony designated as Confidential or Highly Confidential, or the information therein, are not entitled to confidential status or protection or, if designated Highly Confidential, are entitled only to be designated as Confidential. It is understood and agreed that the producing party will have the burden of establishing the grounds for confidential treatment of the document or testimony at issue. The confidential status of the documents, testimony, or information at issue shall be maintained pending the Court's ruling on the motion and any appeal therefrom.

### Nonwaiver of Privileges

19. The inadvertent production in the course of discovery in this action of any document or information (whether designated as confidential or not) shall not be deemed to waive whatever attorney-client privilege, work product protection or other privilege or immunity that would otherwise attach to the document or information produced or to other documents or information, as long as the producing party or person, promptly after discovery, notifies the other party or parties of the claim of privilege or other protection or immunity. Upon such notice, the other party or parties shall promptly destroy all copies of the documents or information referred to and notify the producing party or person that it has done so. Such destruction and notice shall not constitute an acknowledgment that the claimed document or information is in fact privileged or entitled to protections or immunity.

### Nonwaiver of Objection to Discovery

20. Nothing herein shall affect any party's or person's right to object to any discovery request, including the right to assert that no discovery should be had of certain documents or information.  Nor shall anything herein affect any party's right to seek the production of documents, testimony or any other information from any other source.

### Use of Confidential or Highly Confidential Information at Trial

21. Confidential or Highly Confidential Information may be offered in evidence at trial or offered in any hearing subject to procedures to be established by the parties and Court to govern the use and protection of such Information.

### Subpoenas Seeking Confidential or Highly Confidential Information

22. If any party or person that has obtained Confidential or Highly Confidential Information under the terms of this Order receives a subpoena or other legal process commanding the production of any such documents or information (the "subpoena"), such party or person shall promptly notify the party or person that designated the information or documents as Confidential or Highly Confidential of the service of the subpoena.  The party or person receiving the subpoena shall not produce any Confidential or Highly Confidential Information in response to the subpoena without either the prior written consent of the party or person that designated the documents or information as Confidential or Highly Confidential, or an order of a court of competent jurisdiction.  However, the party or person that designated such Confidential or Highly Confidential Information in such case shall have the burden of seeking a court order relieving the subpoenaed party or person of the obligations of the subpoena prior to the return date of

- 13 -

# EXHIBIT 3

**EXHIBIT A**
**(for counsel in related actions)**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE MICROSOFT CORP.<br>ANTITRUST LITIGATION | MDL No. 1332 |

**AGREEMENT CONCERNING CONFIDENTIALITY**

I, _____, hereby certify that:

1.    I have read the Stipulated Protective Order entered in the above-captioned action and understand its terms.

2.    I agree to be bound by the terms of the Stipulated Protective Order.  I agree to use the information provided to me in this case only for purposes of this litigation or for purposes of the related litigation in which I am counsel of record and where I may be subject to another protective order.

3.    I understand that my failure to abide by the terms of the Stipulated Protective Order entered in the above-captioned action may subject me, without limitation, to civil and criminal penalties for contempt of court.

4.    I submit to the jurisdiction of the court in the above-captioned action for the purpose of enforcing the terms of the Stipulated Protective Order and freely and

knowingly waive any right that I may otherwise have to object to the jurisdiction of said court.

Date: _____          Signature: _____

Print Name: _____