102705microsoft.txt

1

1

2
                    IN THE UNITED STATES DISTRICT COURT
3                    FOR THE DISTRICT OF MARYLAND
                           NORTHERN DIVISION
4

5
      IN RE:   MICROSOFT LITIGATION
6
      _____/
7

8
                        Case No. MDL 1332
9                    Thursday, October 27, 2005
                     Baltimore, Maryland
10

11
      Before:   Honorable J. Frederick Motz, Judge
12

13
      Appearances:
14
          On Behalf of National Plaintiffs' Counsel:
15            Price Gielen, Esquire
              Robert Heuck, II, Esquire
16            Daniel Small, Esquire

17          On Behalf of State Plaintiffs' Counsel:
              Andrew Dansicker, Esquire
18            Joshua R. Treem, Esquire
              William P. McGrath, Jr., Esquire
19

20

21

22      Reported by:
        Mary M. Zajac, RPR
23      Room 3515, U.S. Courthouse
        101 West Lombard Street
24      Baltimore, Maryland 21201

25

2

1              THE COURT:   Okay.   We're here on a motions hearing in

102705microsoft.txt

2    the Microsoft MDL 1332.  It briefly can be described as the

3    National Plaintiffs' Counsel, as the Motion to Dismiss filed by

4    the State Counsel of the National, it's the National Plaintiffs'

5    Counsel Motion For Attorneys' Fees, and there's a jurisdictional

6    issue presented.  You all can be seated.

7           I don't know whose motion it is, obviously.  But as you

8    know, my general practice is to tentatively state my views at the

9    beginning of a hearing, frequently to do that, in order to save

10   time and also to let the party against whom I am tentatively

11   against tell me why I'm wrong.  However sympathetic I might be to

12   the National Plaintiffs' Counsel point of view, I don't even

13   think I have anything close to jurisdiction.  So why am I wrong?

14          There's a pretrial order which encourages people to

15   cooperate.  They should have cooperated.  They should have.  If,

16   in fact, people took advantage of other people's work, that's

17   regrettable.  There are lawsuits that can be filed about that,

18   if, in fact, there was a quantum meruit issue.  State courts have

19   already rejected class actions.

20          In the future, I realize this has potential impact on

21   MDL's, but the impact is that, in addition to cooperation,

22   statements, and pretrial orders, people in the MDL are going to

23   have to negotiate agreements that are express.

24          I don't even think this is -- everybody's here.  I'm

25   almost prepared to, I mean, I can just write a letter saying, and

3

1    unless you all do an awfully good job this morning of saying -- I

2    don't have anything close to jurisdiction.  I've got better

3    things to do.  Mr. Gielen.

4           MR. GIELEN:  I appreciate your candor, Your Honor, as I

5    did expect you to express your views as you typically do, sir.

102705microsoft.txt

6                    Your Honor, I think the case that's most persuasive

7     about, if I could just take a moment, because I'm going to reduce

8     quite a bit of what I was going to address to the Court.   Your

9     Honor, I don't think it's any surprise, it's clear from our

10    papers that the case we really upon the most is the Florida Air

11    Crash case.   The holding in that case, and expressly labeled as

12    such, is that the District Court had the power to award

13    compensation to the committee to be paid by the plaintiff's

14    counsel out of fees they were entitled to receive.

15            The basis for that holding was an order similar to the

16    one in this case.   And the rationale behind it and the Fifth

17    Circuit's upholding of the order I think is very applicable.

18            The Fifth Circuit pointed out because of the number of

19    cases it created a class action type of interest.   Here, of

20    course, we were dealing with class action cases.   Then it went on

21    to say, quote, "On the part of the court and the world at large.

22    The power of the court must be assayed in this semi-public

23    context."

24            Then the Court entered an order, and the Fifth Circuit

25    approved an order that required both plaintiffs in federal court

4

1     and plaintiffs in state court to contribute compensation to the

2     lead counsel in that case.   And the Court made it clear that --

3            THE COURT:   Am I correct?   I realize that some of the

4     state court lawyers had cases here.   But in the Florida Air Crash

5     case, didn't all of the plaintiffs' lawyers, had been they

6     represented plaintiffs in the federal action?

7            MR. GIELEN:   Yes.

8            THE COURT:   And that is not the case here, correct?

9            MR. GIELEN:   No.   No.   I'm sorry, Your Honor.   In this

102705microsoft.txt

10    case, I believe all of the plaintiffs lawyers had MDL cases at
11    one time or another.
12              THE COURT:  And were part of the agreement?
13              MR. GIELEN:  And part of the MDL.  I think even, from
14    my understanding, even the state court, even on behalf of their
15    state court cases, they stipulated to the, or the same attorneys
16    handling the state cases and handling the MDL cases stipulated to
17    the entry of Pretrial Order Number One.  And Pretrial Order
18    Number One, if it doesn't provide for compensation, which it
19    doesn't, but if it doesn't contemplate compensation, I think it
20    runs into the same problem as what they saw in the Florida Air
21    Crash case, was that it's somewhat illusory if there's no benefit
22    to be had to being lead counsel.
23              Now, what they said in Florida Air Crash was, the
24    counsel fighting the order argued that the lead counsel were
25    prosecuting the cases and doing all the discovery work, taking

5

1     the laboring oar because they had a self-interest in doing so.
2     And the Court said, well, that may be so but that doesn't detract
3     from the fact that they still should be compensated for their
4     efforts.
5               And the Court went on, the Fifth Circuit went on and
6     reviewed Supreme Court cases, including Sprague v. Ticonic, where
7     a party winning the lawsuit was able to collect funds out of a
8     trust despite the fact that none of the other beneficiaries of
9     the trust were even parties.
10              The Court's rationale and the rationale of the Supreme
11    Court cases was the same.  For the declared object is to
12    redistribute the cost of litigation in a fair proportion to the
13    benefits to strangers that it produces.  What is important --

102705microsoft.txt

14          THE COURT:  But the fees awarded in Florida Aircraft

15     were out of the fees awarded by the federal court.

16          MR. GIELEN:  I don't think that's correct, Your Honor.

17     I think there's three --

18          THE COURT:  It's not?  I'm just looking at it now.

19          MR. GIELEN:  I point out three things, Your Honor.  On

20     Page 1008, the Court discussed the fact that cases were filed in

21     state and federal courts.  On that same page, it discussed the

22     fact that the committee was set up to handle discovery in both

23     state and federal cases.

24          On Page 1010 appears a section of the order that

25     prohibited the defendant from paying any settlement, state or

                                                                    6

1      federal, without a stipulation that the contribution required by

2      the Court had been made.

3          It's Paragraph Nine, I believe, of the order that

4      that's set forth on Page 1010 of the opinion.  And Your

5      Honor, the --

6          THE COURT:  Go ahead.

7          MR. GIELEN:  Part of the reasoning, also, of the Fifth

8      Circuit which is consistent with the reasoning in the Marino case

9      that, of course, you decided and was upheld by the Fourth Circuit

10     was that if you don't have the right to impose fees, compensation

11     for those who do the majority of the work, carried the load,

12     there is a real possibility of inconsistent decisions in all the

13     various courts that they might go to.  Both cases have that in

14     common.

15          Here, Your Honor pointed out in your initial comments

16     that there was an effort to go to some state courts and try to

17     intervene.  But those state courts did not rule on the merits.

                          Page 5

102705microsoft.txt

18      They ruled that there was no right to intervene.

19          The National Plaintiffs' Counsel never became a party

20  in any of those cases and in several of the state courts there

21  was not an attempt to intervene.  And once you lose a few and the

22  other side starts giving the prior opinions of the other state

23  court, you're not going to get too far on a Motion to Intervene.

24          So they came to this forum.  And this is the only court

25  that could really handle it on a national basis, on a global

7

1   basis.  In fact, the North Carolina Court, when it declined the

2   petition or the Motion to Intervene, said, look, this case

3   really, or this dispute really should be taken to federal court

4   where it really began.

5           THE COURT:  Go back to Florida Aircraft.  Maybe I'm

6   misreading it.  The provisions in the settlement, maybe that was

7   the justification for what the district judge did.  I read it as

8   saying, this is a dispute over attorney fees awarded to a small

9   group of plaintiffs' counsel who were designated by the district

10  court as leader/liaison counsel for plaintiffs' side in a massive

11  consolidated multi-district case.  The fees were awarded out of

12  fees receivable by other plaintiffs' counsel.

13          Well, maybe I'm wrong.  I thought it was fees awarded

14  in the federal case.  And that maybe the justification was, was

15  that there was this other order.  It says fees paid out of, and

16  that's not what I've got here.  And I thought the courts

17  elsewhere said that they declined to, quote, "consider the

18  authority of the district court to assess a fee in cases not

19  formally before it", at Page 1010.

20          MR. GIELEN:  But Your Honor, actually, the only thing

21  that they cut out of the order, you see it in Footnote Five, is

Page 6

102705microsoft.txt

22    the part of the order that not only required state and

23    plaintiffs' counsel to contribute, but required claimants who

24    hadn't even filed a suit to contribute.

25            If you look at Footnote Five, you will see that the

8

1     court declined to consider that aspect of the order because the

2     claimants had settled with the lead counsel prior to the hearing.

3     That's the only cut-out from the court's order.  Claimants who

4     hadn't even filed in any court.  The only reason the Court didn't

5     consider that is a settlement was reached.

6            I think the case can fairly be -- but you know what?

7     Even if you don't read it that way, although I think it can

8     fairly be read that way, this is a different situation because

9     the counsel in this case did appear in the MDL.  They were in

10    federal court.  Now, they also had cases in state court.  As I

11    understand it, a lot of the cases were moved to federal court.

12    For strategic reasons, eventually they decided to refile in state

13    court, removing some language that may have allowed for the

14    removal.

15            THE COURT:  Sometimes that's worked, sometimes it

16    hasn't.  I don't know whether, depends upon my mood or real

17    differences in the allegations.  Sometimes I question myself.

18            I think, I've been trying to be consistent.

19            MR. GIELEN:  Well, they managed to change the language

20    enough to proceed without removal in the state court and to get

21    these settlements.  And the settlements clearly, and I think Your

22    Honor recognizes this, the National Plaintiffs' Counsel did a

23    tremendous amount of mutual benefit work, as it's called in the

24    papers, including setting up a huge document database that

25    included attorney work product, analyses, legal memos.

102705microsoft.txt

9

1          Going back to Florida Air Crash.  If Your Honor's
2     concerned about the Rooker-Feldman doctrine, I'll address that,
3     also, because I don't think --
4          THE COURT:  Rooker-Feldman, if I was in the Seventh
5     Circuit.  I'm in the Fourth Circuit.  Rooker-Feldman is not the
6     primary focus of my attention this morning.
7          MR. GIELEN:  Good, because I don't see where that
8     applies at.  But I understand Your Honor could be focused on the
9     Showa Denko case, also.  But this is a much easier case than
10    Showa Denko.  In Showa Denko, the order, it appears that the
11    order was, first of all, it was directed at parties, not to
12    counsel, and I think that's a significant difference.
13         In this case, as in Florida Air Crash, the order is
14    directed or we're requesting an order that would be directed at
15    counsel and requiring counsel who appeared in the MDL, who
16    stipulated to the entry of Pretrial Order Number One, who
17    accepted the benefits of it, simply to compensate the National
18    Plaintiffs' Counsel for the benefits they accepted.
19         They got more than 70 million dollars.  National
20    Plaintiffs --
21         THE COURT:  If Rooker-Feldman or simple principles of
22    res judicata don't apply, why can't National Counsel sue state --
23    and there was an agreement or an unjust enrichment, why can't
24    they just bring an action, a regular law action in either federal
25    court or state court?  Probably in state to avoid a

10

1     Rooker-Feldman issue.
2          If, in fact, there is merit to the claim, why don't you

Page 8

102705microsoft.txt

3      file a lawsuit?

4              MR. GIELEN:  I think there's a couple good reasons for

5      that, Your Honor.  One is it wouldn't be a lawsuit, it would be a

6      series of lawsuits.

7              THE COURT:  That hasn't seem to bother plaintiffs'

8      counsel in MDL cases before.

9              MR. GIELEN:  Well, there's more justification for them

10     when they're doing MDL cases, as you know.  Well, I don't need to

11     go into that.  You know there's specific strategic reasons for

12     doing it in the MDL cases.

13             But here, Your Honor, it's an order and it relates

14     directly to an order that you issued.  And to effectuate that

15     order, to keep control over the order and the actions that were

16     taken under it, in good faith and in adherence to your request

17     and direction, and for judicial efficiency, huge judicial

18     efficiency, it should stay in this court.

19             You are more familiar with it than anyone.  You could

20     deal with it much more efficiently than anyone.  And it would be

21     decided in one court.

22             And the cases allow for you to do it.  In addition to

23     Florida Air Crash, which seems to be directly on point, other

24     than the fact that we have an easier case because all of these

25     counsel did appear in the MDL, which was not the case,


                                                                    11


1      apparently, in the Florida Air Crash, Showa Denko, I don't think,

2      creates any bar to it because, again, that order was directed at

3      parties, not counsel.  And the order was issued very early in the

4      litigation.

5              There's no discussion regarding what involvement the

6      state plaintiffs had with discovery efforts conducted by the

102705microsoft.txt

7      steering committee.  Presumably, they hadn't even occurred.

8      There was an interlocutory appeal.  And it really appears to be a

9      case decided in personal jurisdiction rather than subject matter

10     jurisdiction.  I think that's also a very important difference

11     here, Your Honor.

12            I don't think there's any question but that you have

13     personal jurisdiction because these lawyers appeared here in the

14     MDL.  I think what you're struggling with is subject matter

15     jurisdiction.

16            In Showa Denko, it's a short opinion and it twice makes

17     the point that the Court can't require payments from, quote,

18     "unrelated", close quote, parties who have not been brought in

19     through service of process or, quote, "have not voluntarily

20     entered the litigation before the district court", close quote.

21     That's not the case here.

22            Here we're focused on counsel.  Counsel were in the

23     MDL.  They stipulated to the pretrial order on which this case is

24     really based.  And here the States' Plaintiffs' Counsel, to use

25     the phrase, were actively involved in litigation before this

                                                              12

1      court.  All had cases in the MDL.  Three served on the lead

2      counsel committee.  When the State Plaintiffs' Counsel entered

3      their appearance in depositions, they would say something along

4      the lines that they were there to represent the plaintiffs in the

5      MDL, as well as the various state matters.  They had full access

6      to the electronic database set up under the pretrial order.

7             And we've put in written exhibits which State

8      Plaintiffs' Counsel describes themselves as participating in a

9      team effort.  One of them describes the effort as National

10     Plaintiffs' Counsel being the hub, State Plaintiffs' Counsel

102705microsoft.txt

11      being the spokes.

12              Your Honor, I recognize the difficulty you're having

13      with the case, but I also know this.  I know that you, from

14      everything I've seen, I think this is the third MDL I've had

15      contact with you in, been heavily involved in two others, you

16      wanted to promote, as you should, as the judiciary should,

17      coordination and efficiency between not only the plaintiffs in

18      the federal cases but the plaintiffs in the state cases.

19              THE COURT:  That's a nice way of saying I'm a control

20      freak, but I accept the characterization.

21              MR. GIELEN:  Your Honor, and actually, the appellate

22      courts tell you to be a control freak.  I think it's the Manual

23      on Complex Litigation says you need a judge with a firm hand.  I

24      think that's a quote from the manual or it's a quote from one of

25      the appellate decisions.

                                                                    13

1               And the reason why is that these cases have, they

2       threaten the entire judiciary.  They take up so much time, so

3       much space.  They're complex.  They're throughout the country.

4       And what you're doing, no one could criticize in a million years

5       your efforts to require this coordination.  It's applauded.

6               And that gives you the power, the inherent power to,

7       when your desires and your directions as a federal judge, in

8       order to promote efficiency, to promote economies, that should

9       imbue you with the power to also say, wait a minute, I've got

10      equitable powers here and if something wrong happens because of

11      an order that's been followed not only to the letter of my order

12      but in the true spirit of it, as it has in this case, and those

13      equitable powers allow me to take subject matter jurisdiction,

14      particularly over people that I have personal jurisdiction

102705microsoft.txt

15    because they appeared in the MDL, and to award compensation when

16    it's due.

17          The State Plaintiffs' Counsel got over 70 million

18    dollars.  The National Plaintiffs' Counsel got nothing.  The

19    monies that they received from the one settlement was just about

20    equal to, maybe a little less, than the expenditures that they've

21    expended, not only for their cases but for the cases in which the

22    State Plaintiffs' Counsel have done so well in.

23          How much National Plaintiffs' Counsel should receive

24    should depend upon a lot of factual matters that we don't need to

25    go into now, that would, that would be fleshed out over the

                                                                    14


1    course of future proceedings.

2          THE COURT:  If I'm wrong about Illinois Brick, the

3    whole situation might change.  Is that right?  I really hadn't

4    thought of that until just now.  Isn't the Illinois Brick issue

5    in the Fourth Circuit now?

6          MR. GIELEN:  Yes, Your Honor.

7          THE COURT:  So it could be that if I was wrong,

8    compensation may be otherwise coming your way.  People now

9    sitting on the sidelines may be back in the thick of the fray.

10          MR. GIELEN:  Your Honor, that's true, but in the due

11    course all that can be handled through a proper procedure.

12          THE COURT:  Absolutely.  Absolutely.  If that was the

13    issue, that could be handled.

14          MR. GIELEN:  Your Honor, my co-counsel handed me a page

15    from our brief which makes a point that I alluded to a little

16    while ago in short matter; that how important it is to keep the

17    case here, and not for us -- as much for us as for the Court.

18          In the Florida Air Crash case, the Court stated,

102705microsoft.txt

19    without a doubt, many of the settlements, particularly for death

20    claims, would have to be paid through various courts over the

21    country.   Normally, such a court would have the power to fix

22    compensation between competing attorneys.   In a practical sense,

23    the District Court for the Southern District of Florida was the

24    only tribunal that could effectively handle the fee matter.   It

25    would have been unfeasible and irrational and demeaning to the

                                                                   15


1    authority of the appointing court to remit the committee to

2    appearing all over the country in each of the numerous probate

3    and like courts under whose authority administration of

4    settlement monies would be handled to present prayers for

5    compensation.

6         THE COURT:   Jurisdictional issues aside, not that this

7    should govern.   But in a way, an air disaster raises different

8    policy issues.   It's a single incident.   Single incident cases

9    very often, different contexts raise different concerns.   You've

10    got admission of liability by a defendant in a single incident,

11    that is somewhat different from litigating a case such as this on

12    different theories and with different legal issues, and a whole

13    different forum.

14         MR. GIELEN:   But I think the salient point, Your Honor,

15    is one of judicial economy and what makes sense in the overall

16    scheme of things.   The same point was raised by the Court, Fourth

17    Circuit in approving your decision in Marino.   They basically

18    said that if you did not have jurisdiction, you could have

19    conflicting results across the country in that kind of situation.

20    That's exactly what we're faced with here.

21         If we brought lawsuits in all the various state courts,

22    we could end up with conflicting results across the country.

                               Page 13

102705microsoft.txt

23        That was said by the Fourth Circuit to be a rational basis for
24        you to accept jurisdiction where you had -- now, the other side
25        will say, wait, in Marino you had a court order.   But that was a

16

1         court order you entered.   That wasn't a court order that anyone
2         else had agreed gave you jurisdiction over them, particularly Ms.
3         Marino, who filed a state court action out in California.
4                Here, the order that we're relating your authority to
5         is one that you entered with a stipulation from the very same
6         counsel that we're trying to get to contribute to compensation
7         for the efforts of National Plaintiffs' Counsel.
8                THE COURT:   As you know, I have not been shy about
9         using my authority, power to perhaps its outermost limits in
10        cases like Marino.   Nothing is more destructive of authority and
11        power than to exercise it beyond its limits because then you get
12        holdings that cut in, you know, at the borders.   Appellate court,
13        Fourth Circuit was generous in Marino and seemed to think what I
14        did made sense.
15               But if you try to extend your authority and power too
16        far, then you're going to get holdings, you know, recognizing
17        like in this Showa Denko case, which sends out warnings and
18        holdings that actually could be destructive to MDL judges,
19        transferee judges.
20               MR. GIELEN:   I understand your point, Your Honor.
21        Showa Denko, I think, did just that, probably.   But I think it
22        happened from my reading of the case -- just as a side note, I
23        was actually in that case when it was here in Maryland.
24               THE COURT:   It does seem to be written in terms of
25        personal jurisdiction.

1        MR. GIELEN:  Yes.  Yes.  In terms of personal
2    jurisdiction, most definitely, and also because the Court
3    approved it for interlocutory appeal and the Fourth Circuit
4    accepted it for interlocutory appeal, it was handled at a point
5    in time when there could be no factual record as to what had been
6    done with respect to the order.
7        In contrast here, we have an excellent factual record.
8    We know that the order was carried out.  We know that the counsel
9    that had been denominated as state plaintiffs' counsel acted
10   under the order, accepted the benefits of the order, accepted all
11   the wonderful work of the National Plaintiffs' Counsel under the
12   order.  And we're simply asking that you exercise your ancillary
13   jurisdiction and/or inherent power as the manager of the MDL in
14   which these same attorneys appeared to require them to do what's
15   fair, compensate the National Plaintiffs' Counsel for the
16   tremendous amount of work they did and for which they received no
17   compensation.
18       THE COURT:  Thank you, Mr. Gielen.  Mr. Dansicker.
19       MR. DANSICKER:  Good morning, Your Honor.  I'll keep my
20   remarks brief in accordance with Your Honor's guidance.  Let me
21   start from the back and work my way forward.
22       My learned colleague, Mr. Gielen, points out that it's
23   important for this Court to maintain judicial economy, relying on
24   this Court's decision in Marino.  But the fundamental difference
25   between this case and Marino is that in Marino there was a

18

1    settlement agreement.  The settlement agreement that was entered
2    into by this court specifically stated that this court reserved

Page 15

102705microsoft.txt

3    jurisdiction over all future disputes relating to attorneys fees.

4    There was a basis for this court exercising inherent authority

5    after the settlement had been finished.  There is no such basis

6    here.

7            This really gets into the previous argument set forth

8    by Mr. Gielen about how the attorneys' fee dispute here relates

9    directly to an order issued by this Court.  That's true.  But

10   that's not enough.  That's what Taylor holds.  That's what

11   Fairfax County holds.  And that's really what Marino is all

12   about.

13           Every dispute over attorneys' fees relates in some way

14   to an order issued by the court because courts issue discovery

15   orders and work is done by attorneys pursuant to discovery

16   orders.  In this case, there was Pretrial Order Number One, which

17   was very explicit about coordination and discovery efforts to be

18   undertaken by National Plaintiffs' Counsel.

19           But similar types of orders are issued in every case

20   about discovery.  The difference, and what Marino and Taylor and

21   Fairfax all hold, is that when a dispute breaks out among

22   attorneys, after the case has been resolved, the trial court has

23   no inherent authority to resolve that dispute unless there is

24   some order of the court that specifically reserves that

25   authority -- a settlement agreement, an attorney's fee award,

                                                              19


1    something.

2            Pretrial Order Number One doesn't even mention

3    attorneys' fees.  It's a well-thought-out, organized order that

4    covers every aspect of discovery but it does not mention

5    attorneys' fees, it doesn't provide for attorneys' fees.  It was

6    left to the counsel themselves to work out an agreement as to how

                              Page 16

102705microsoft.txt

7    National Plaintiffs' Counsel was to be compensated for use of any

8    common benefit work.  That never happened.  There was never an

9    agreement reached.

10          And when you go through all these cases cited by

11    National Plaintiffs' Counsel what you find, and National

12    Plaintiffs' Counsel are among the most well respected, top of the

13    class plaintiffs' counsel in the United States, obviously, they

14    were aware of these cases before Pretrial Order Number One was

15    even issued.  And they know that in those cases, either the

16    parties reached an express agreement about how the lead committee

17    was to be compensated for the common benefit work, or the Court

18    issued an order.  Neither one happened here.

19          National Plaintiffs' Counsel could have negotiated with

20    State Plaintiffs' Counsel.  In fact, there were some

21    negotiations, but no agreement was ever reached.  At that point

22    it was National Plaintiffs' Counsel obligation to go back to this

23    court if they thought they were being wronged and say, Your

24    Honor, you issued Pretrial Order Number One, we're doing all this

25    common benefit work, how are we going to get compensated?

20

1    States' Plaintiffs' Counsel refused to enter an agreement with

2    us.  We'd like you to either order them to enter an agreement or

3    tell us it's okay to stop them from using the common work.  But

4    they never did that.

5          That never happened in this case presumably because

6    National Plaintiffs' Counsel thought this was going to be a

7    billion dollar settlement case and they were going to get

8    attorneys fees, an award that would more than compensate them for

9    the common benefit work, just as States' Plaintiffs' Counsel

10    thought that they would do well in their state's case and they

Page 17

102705microsoft.txt

11   would get compensated.

12          Nobody would want to share.  State Plaintiffs' Counsel

13   doesn't want to share their money with National Plaintiffs'

14   Counsel, and National Plaintiffs' Counsel didn't want to share

15   their money with States' Plaintiffs' Counsel.  But that's life as

16   a contingency lawyer.  And unfortunately, sometimes you lose.

17   And sometimes you don't win the billion dollar case and you don't

18   win the hundred million dollar attorney fee award.  And that's

19   what happened here subject to the Fourth Circuit reviewing this

20   case and sending it back.  And that may happen.

21          But the point, and it's critical, is that there's no

22   underlying document here by which any inherent jurisdiction or

23   any inherent authority can be exercised by this court.  It's

24   expressly what the Fourth Circuit said in the Taylor case.  An

25   attorney fee dispute broke out after the case was settled and the

21

1    Fourth Circuit said, you should have gotten that trial court to

2    order that settlement and to reserve issues of attorneys' fees

3    but you didn't.  And that's precisely what happened here.

4           Going back to the jurisdiction argument, the other

5    inherent jurisdiction argument, Your Honor.  I've read the Air

6    Crash case and there's nothing in that Air Crash case that says

7    that the ruling applies to state court counsel.  Paragraph Nine

8    specifically says that it relates to those related civil actions

9    or claims.

10          And when you read the decision, it seems pretty clear

11   that that's referring to all the MDL-related civil actions and

12   claims.  In both In Re Showa Denko and In Re Linerboard, the two

13   cases that are almost exactly on point with our case, where the

14   Court said the Court doesn't have authority to get involved in a

102705microsoft.txt

15  fight over state, over attorneys' fees that are awarded in a

16  state action.   There is no inherent jurisdiction to do that.

17       Both those cases cite to the In Re Air Crash case one

18  way or another, but they don't cite it for the theory that that

19  case held that a court has the jurisdiction to order state court

20  counsel to contribute monies into a federal court common fund

21  when those cases aren't in front of the federal judge.   Those

22  cases are in front of state judges.   And that's exactly the

23  situation here.

24       What National Plaintiffs' Counsel is really trying to

25  do is have this court exercise jurisdiction over what are

22

1   effectively state court cases.   And to try to draw some kind of

2   distinction between In Re Showa Denko applying to parties or

3   counsel ignores the underlying holding of that case, which is

4   really a case about federalism.   It's a case about state rights

5   and comity and the respect that's due to the state courts, such

6   as in this case where, for instance, the Florida courts spent

7   four days having a contested attorneys' fees hearing with expert

8   witnesses, so forth and so on, to arrive at a result of who was

9   going to get which attorneys' fees for work that was done.

10       States' Plaintiffs' Counsel submitted petition fees of

11  the hours they spent working on the case.   And now National

12  Plaintiffs' Counsel want this court to order them to give up a

13  large percentage of that money, which was awarded to them for

14  their hours spent in the case.   And while that may not be a

15  direct reversal of the state court judgment, it sure gets

16  involved in the proceedings that happened in the state court and

17  would lend uncertainty to those types of proceedings.

18       Obviously, Your Honor doesn't want to hear a

102705microsoft.txt

19    Rooker-Feldman argument, I'm not going to get into that.   But

20    there is a very important comity and federalism slant to these

21    arguments.   And what National Plaintiffs' Counsel is trying to do

22    is really set up a situation where the state court judgments

23    become uncertain.   State courts themselves, when they have to

24    handle attorneys' fees award, are going to be in limbo in any

25    MDL, wondering what's going to happen down the road when the MDL

23

1    settles and some attorney who was one of the National Plaintiffs'

2    Counsel says, well, I took the key deposition in this case and

3    all these attorneys in Mississippi relied on that deposition,

4    therefore they owe me some money.   That's going to come up in

5    every MDL case if this type of procedure is approved.

6           Your Honor, whether from a practical viewpoint, from a

7    practical viewpoint we don't think this makes any sense at all.

8    I mean, the other option is very simple.   National Plaintiffs'

9    Counsel go to the states, they file their actions.   They file a

10    complaint.   They pay their filing fee.   They say, we've got a

11    cause of action, we have a case in controversy.   We believe that

12    these attorneys used our work product to profit and, therefore,

13    there's an unjust enrichment claim or quantum meruit claim or

14    breach of implied contract claim or joint venture claim.   But

15    those are all state law claims that should be heard in state

16    court.

17           National Plaintiffs' Counsel want this Court, now that

18    it's resolved the Microsoft case, to spend the next year or two

19    litigating state law matters from a bunch of different states

20    involving nearly three dozen parties.   It's really, judicial

21    economy is the exact opposite of what would happen if the NPC's

22    motion was granted, Your Honor.

Page 20

102705microsoft.txt

23          That's all I have, Your Honor.  Any other questions

24   that you have?

25          THE COURT:  No.  Mr. Gielen.

                                                              24


1           MR. GIELEN:  Thank you, Your Honor.

2           THE COURT:  Excuse me.  I'm sorry.  Mr. McGrath.

3           MR. MCGRATH:  Thank you.  Your Honor, I, too, will be

4    very brief.  I'm here on behalf of the Zelle Hofmann firm in

5    Minnesota.  I understand the Court is focusing on the subject

6    matter jurisdiction.

7           If the Court feels differently from the views it

8    expressed at the beginning of this hearing, in addition to the

9    arguments that Mr. Dansicker has raised regarding the

10   practicality, I want to point out the fact that Zelle Hoffman has

11   also raised a personal jurisdiction argument here in this case as

12   well.

13          We don't think that the National Plaintiffs' Counsel

14   has put forth the necessary minimum contacts with this Court.

15   Mr. Gielen may get up and argue regarding the appearance of Zelle

16   Hofmann attorneys in the MDL.  Those contacts are not adequate

17   under the minimum contacts analysis in this jurisdiction.

18          They are seeking the fees for claims that arise out of

19   a state court case litigated entirely in Minnesota.  I again echo

20   that if they should be bringing a case to seek those fees, they

21   should bring it in Minnesota.  They are in the wrong court.

22          They had an opportunity to do that back in last summer,

23   when the Minnesota case was settled.  Minnesota is one

24   jurisdiction where they did not seek to intervene.  They were

25   given notice.  They had an opportunity to submit a fee petition.

                                                              25

102705microsoft.txt

1      They had an opportunity to object to the fees that were awarded.
2      They had an opportunity to appeal the final order in that case
3      and they did not do so.
4             So Your Honor, not only are they in the wrong court,
5      they're here at the wrong time.
6             THE COURT:  Are you with Mr. Crew's firm or are you
7      with somebody else?
8             MR. MCGRATH:  Pardon?
9             THE COURT:  Are you with Mr. Crew's firm?
10            MR. MCGRATH:  No.  I'm with the firm of Porter Wright
11     Morris & Arthur.
12            THE COURT:  I'm just sort of curious.  I thought Mr.
13     Crew was litigating this.  Maybe I made that up.  There never was
14     a lot of cooperation with the California people.
15            MR. MCGRATH:  We did, Your Honor, work closely with the
16     California organization.  Thank you.
17            THE COURT:  Mr. Gielen.
18            MR. GIELEN:  Your Honor, I'm going to begin and end my
19     brief response with citations to two Supreme Court cases.  The
20     first case is Kokkonen v. Guardian Life, a 1994 case, talking
21     about ancillary jurisdiction.  Gave two different bases.  And the
22     second bases for ancillary jurisdiction was, enable a court to
23     function successfully, that is to manage its proceedings,
24     vindicate its authority, and effectuate its decrees.
25            I think that's really exactly what we're asking the

                                                                        26

1      Court to do here.  Mr. Dansicker, in his comments, said that --
2             THE COURT:  If it was ancillary jurisdiction, even if I
3      had it, it would be within my discretion whether to exercise it,
                                   Page 22

102705microsoft.txt

4       correct?

5               MR. GIELEN:  It would.  But I think here, Your Honor,

6       particularly with the Fourth Circuit's indication in Marino, that

7       you should exercise jurisdiction when it could alleviate a

8       situation where you could have inconsistent results in state

9       court proceedings around the country.  This would be the perfect

10      opportunity to do it.

11              Also because of the fact that the National Plaintiffs'

12      Counsel here followed your order to the T.  They did everything

13      that you could possibly want them to do in terms of setting up an

14      electronic database that had attorney work product on it,

15      analyses, transcript summaries, all the documents.  It was really

16      an epitomy of what you wanted in terms of coordination.

17              Your Honor, it was said in response to my arguments, it

18      was left up to counsel to work out how lead counsel would be

19      compensated.  That's an admission.  That's a recognition.  And I

20      don't think it's a terribly hard one for them to make because

21      it's obvious.  It's implicit in the scenario, the events, that

22      the parties recognized that lead counsel should be compensated.

23              And if you can do it in an order at some point earlier

24      in the proceedings, I haven't heard a good reason why you can't

25      do it now, now, when the record's fully developed and it's known

27

1       that the National Plaintiffs' Counsel did a tremendous amount of

2       work and really didn't get compensated for it.

3               The reference to cases where the courts have denied

4       jurisdiction over disputes over the settlement agreement, they

5       don't really apply, or attorneys' fees after the case is done,

6       you don't see those in MDL cases because it's a unique animal.

7       You have to be more assertive.  You have to do more to manage

102705microsoft.txt

8      those kind of cases.

9              You have jurisdiction because it made sense for you to

10     have jurisdiction, just as in Marino it made sense for the Fourth

11     Circuit to approve your decision, say you had jurisdiction,

12     because you dealt with it all along.  Simply because you declare

13     you had jurisdiction in an earlier order, that doesn't make it

14     so.  You had jurisdiction because it was appropriate and proper

15     for you to have jurisdiction, just as it would here.

16              There's no law that says that there has to be a

17     retention agreement or a signed agreement or written agreement

18     for fees to get paid for work that's done.  This work was done.

19     It was done pursuant to the pretrial order.  And it would really

20     facilitate judicial economy, it would facilitate the management

21     of these kinds of cases for that work to be acknowledged and to

22     be appropriately compensated.

23              Your Honor, the other case I mentioned earlier, the

24     other Supreme Court case I mentioned earlier, Sprague v. Ticonic,

25     and it was a 1939 decision, and I think the rationale is the


                                                                      28


1      same, you see it in other cases, about exercising your equitable

2      powers.  When a fund is, for all practical purposes, created for

3      the benefit of others, the formalities of the litigation, the

4      absence of an avowed class suit or the creation of a fund, as it

5      were, through stare decisis rather than through a decree hardly

6      touch the power of equity in doing justice as between a party and

7      the beneficiaries of his litigation.

8              State Plaintiffs' Counsel were the beneficiaries of the

9      litigation efforts made by National Plaintiffs' Counsel.  We

10     would ask that you exercise your ancillary jurisdiction and your

11     inherent power in the court overseeing this complex litigation
                              Page 24

102705microsoft.txt

12      and enter an order that allows for further consideration of the
13      claim for compensation.
14              THE COURT:   Thank you.   As I indicated before, this
15      obviously is a matter that involves a lot of money and it's not
16      without complexity.   On the other hand, as a district judge you
17      have to triage.   Sometimes you write opinions, sometimes you
18      don't.   This one I'm not going to write an opinion.
19              This is a stretch too far. I don't believe I have
20      subject matter jurisdiction, and if I did and it was ancillary, I
21      would decline to exercise it.
22              If, in fact, National Plaintiffs' Counsel did work for
23      which they should have been compensated, I sincerely regret that
24      State Plaintiffs' Counsel has not provided appropriate
25      reimbursement.   Certainly, the spirit of Pretrial Order Number

                                                                    29


1      One was that there would be coordination and the spirit of the
2      order would have resulted in, you know, fair compensation.
3              But if, in fact, an agreement could have been
4      negotiated, it wasn't.   I'm not going to get into whether, what
5      happened, whether Mr. Dansicker is right, why it fell down or
6      didn't fall down.   That doesn't matter.   The fact is there wasn't
7      an agreement.   It was within the power of counsel to negotiate
8      the agreement.   To the extent that the law would permit recovery
9      even absent an agreement on the basis of unjust enrichment or
10     quantum meruit or implied contract, that is a matter of state
11     law.   And to the extent plaintiffs' counsel were wronged, they
12     can seek to file such an action in the appropriate court.   That
13     might be a state court.   Could be federal court if there was
14     diversity, and presumably the jurisdictional amount was reached.
15     I don't think there's any question about that because this is a

102705microsoft.txt

16    millions of dollars dispute, not a $75,000 dispute.

17          I guess filing in federal court probably would raise

18    Rooker-Feldman if I find state court wouldn't.  Res judicata may

19    be there, anyway, but that's an issue for litigation in the state

20    courts.

21          To the extent that a wrong was committed, it is because

22    an agreement wasn't reached and there should be a remedy of

23    unjust enrichment or quantum meruit, which I don't believe would

24    be appropriate for, I don't think it's a federal remedy because

25    Pretrial Order Number One said there was to be coordination.

                                                              30

1     Again, the spirit of Pretrial Order Number One would have

2     contemplated that.  As things turned out, counsel made their own

3     choices.  There was no agreement.  Counsel are now, in my

4     judgment, relegated to their state court remedies to be asserted

5     in an appropriate forum.

6           I have not been shy in MDL proceedings about exercising

7     my power and authority.  And I think I've been right in doing so

8     because I agree with Mr. Gielen that it's necessary and, whenever

9     possible, for a transferee judge to, the first thing he or she

10    should do is to try to get everybody else involved to cooperate,

11    whether it's counsel or state courts.  But finally, when you have

12    to exercise authority, you have to exercise it if it's within

13    your bounds to do so.

14          This is different from Marino.  It's different from the

15    case I was involved.  I remember I set aside an arbitration out

16    in California involving Mr. Silver, which it probably was a

17    stretch, too.  But I think under the circumstances it really

18    prevented a manifest injustice.  It was within my jurisdiction.

19          This, I'm being asked to order the payment of funds out

102705microsoft.txt

20      of state court settlements.  I just don't see where that comes

21      anywhere close to my jurisdiction.  I don't read the Florida

22      Aircraft decision as authorizing that.  I still think, maybe I'm

23      misreading it, I thought it was payments out of the funds, out of

24      the fees awarded in federal court proceedings. That's how I read

25      it.

31

1               And I thought that the Court expressly declined, the

2       Fifth Circuit expressly declined to, quote, "consider the

3       authority of the district court to assess a fee in cases not

4       formally before it."

5               But if I've read In Re Crash Disaster incorrectly,

6       frankly, I respectfully disagree with it.  I don't think that a

7       transferee judge does have the authority to order funds paid in a

8       state court proceeding over to national counsel in the MDL

9       proceeding.

10              And I certainly am guided by the Fourth Circuit's

11      expression of views in cases such as, mentioned a couple times,

12      In Re Showa -- we've been saying this, Mary, but we haven't

13      spelled it.  It's S-H-O-W-A, Denko, D-E-N-K-O and Taylor v.

14      Kelsey, K-E-L-S-E-Y. The cases can be distinguished.

15              Certainly, Showa Denko seemed to focus upon personal

16      jurisdiction rather than subject matter jurisdiction, but the

17      concerns expressed by the Court on a general level are equally

18      applicable here.

19              So for all of these reasons, I guess what this is is --

20      what is the pending motion?  Are there two pending motions?  Are

21      there cross motions?  Motion for attorneys fees?  Did you all

22      move to dismiss it?  I just need to know for documents.

23                   MR. DANSICKER:   Yes.

102705microsoft.txt
24          THE COURT:  So I grant the Motion to Dismiss the
25  National Counsels' Petition, Motion for Attorneys' Fees, and it

                                                          32

 1  follows that that motion, therefore, is denied.
 2          Thank you very much.
 3          (Conclusion of Proceedings.)
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

                                                          33

102705microsoft.txt

1                        REPORTER'S CERTIFICATE

2

3           I, Mary M. Zajac, do hereby certify that I recorded

4    stenographically the proceedings in the matter of In Re:

5    Microsoft Litigation, Case Number(s) MDL 1332, on October 27,

6    2005.

7               I further certify that the aforegoing pages constitute

8    the official transcript of proceedings as transcribed by me to

9    the within matter in a complete and accurate manner.

10              In Witness Whereof, I have hereunto affixed my

11   signature this _____ day of _____, 2005.

12

13

14

15                              Mary M. Zajac,
16                              Official Court Reporter

17

18

19

20

21

22

23

24

25